LINCOLN PROPERTY CO. ET AL. *v.* ROCHE ET UX.

No. 04–712.   Argued October 11, 2005—Decided November 29, 2005

82

GINSBURG, J., delivered the opinion for a unanimous Court.

*David C. Frederick* argued the cause for petitioners. With him on the briefs were *Scott K. Attaway, Connie N. Bertram, Richard A. Dean,* and *Carol T. Stone.*

*Gregory P. Joseph* argued the cause for respondents. With him on the brief were *Sandra M. Lipsman* and *Douglas J. Pepe.**

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns 28 U. S. C. § 1441, which authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court. § 1441(a). When federal-court jurisdiction is predicated on the parties' diversity of citizenship, see § 1332, removal is permissible "only if none of the parties in interest properly

---

*Briefs of *amici curiae* urging reversal were filed for the Real Estate Roundtable et al. by *Gregory G. Garre;* and for the Washington Legal Foundation by *Daniel J. Popeo* and *Richard A. Samp.*

joined and served as defendants is a citizen of the State in which [the] action [was] brought." §1441(b).

Christophe and Juanita Roche, plaintiffs below, respondents here, are citizens of Virginia. They commenced suit in state court against diverse defendants, including Lincoln Property Company (Lincoln), a corporation chartered and having its principal place of business in Texas. The defendants removed the litigation to a Federal District Court where, after discovery proceedings, they successfully moved for summary judgment. Holding the removal improper, the Court of Appeals instructed remand of the action to state court. 373 F. 3d 610, 620–622 (CA4 2004). The appellate court so ruled on the ground that the Texas defendant failed to show the nonexistence of an affiliated Virginia entity that was the "real party in interest." *Id.,* at 622.

We reverse the judgment of the Court of Appeals. Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State. It is not incumbent on the named defendants to negate the existence of a potential defendant whose presence in the action would destroy diversity.[1]

## I

Christophe and Juanita Roche leased an apartment in the Westfield Village complex in Fairfax County, Virginia.

---

[1] Defendants below, petitioners here, presented a second question in their petition for certiorari: Can a limited partnership be deemed a citizen of a State on the sole ground that the partnership's business activities bear a "very close nexus" with the State? Because no partnership is or need be a party to this action, that question is not live for adjudication. We note, however, that our prior decisions do not regard as relevant to subject-matter jurisdiction the locations at which partnerships conduct business. See *Carden* v. *Arkoma Associates,* 494 U. S. 185, 189, 192–197 (1990) (for diversity purposes, a partnership entity, unlike a corporation, does not rank as a citizen; to meet the complete diversity requirement, all partners, limited as well as general, must be diverse from all parties on the opposing side).

About a year after moving in, they discovered evidence of toxic mold in their apartment. Expert inspection confirmed the presence of mold, which the inspection report linked to hair loss, headaches, irritation of the respiratory tract, fatigue, and dermatitis. App. 184–190. The report stated that spores from toxigenic mold species were airborne in the apartment and had likely contaminated the carpeting and fabric surfaces throughout the dwelling. *Id.*, at 188. The Roches moved out of their apartment for the remediation process, leaving their personal belongings in the care of Lincoln, the designated property manager of Westfield Village, and the mold treatment firm. 373 F. 3d, at 612.

Some months later, the Roches commenced suit, filing two substantially similar complaints in the Circuit Court for Fairfax County, Virginia. App. 27–50, 53–75. Both complaints asserted serious medical ailments from the Roches' year-long exposure to toxic mold, and sought damages under multiple headings, including negligence, breach of contract, actual fraud, constructive fraud, and violations of Virginia housing regulations. *Id.*, at 38–48, 64–74. In addition, the Roches alleged loss, theft, or destruction of their personal property (including irreplaceable family keepsakes) during the remediation process. Regarding these losses, they sought damages for conversion and infliction of emotional distress. *Id.*, at 49–50, 74–75.

In state court, the Roches' complaints named three defendants: Lincoln; INVESCO Institutional, an investment management group; and State of Wisconsin Investment Board, the alleged owner of Westfield Village. *Id.*, at 26–28, 52–54. The complaints described Lincoln as "a developer and manager of residential communities, including . . . Westfield Village." *Id.*, at 27, 53. "[A]cting by and through [its] agents," the Roches alleged, Lincoln caused the personal injuries of which they complained. *Id.*, at 30, 56.

Defendants timely removed the twin cases to the United States District Court for the Eastern District of Virginia,

invoking that court's diversity-of-citizenship jurisdiction. See 28 U. S. C. §§ 1332(a)(1), 1441(a). The notice of removal described Lincoln as a Texas corporation with its principal place of business in Texas, INVESCO as a Delaware corporation with its principal place of business in Georgia, and State of Wisconsin Investment Board as an independent agency of Wisconsin. App. 81. In their consolidated federal-court complaint, the Roches identified themselves as citizens of Virginia and Lincoln as a corporation headquartered in Texas, just as they did in their state-court complaints. *Id.*, at 27, 53, 114–115.[2] Further, they stated affirmatively that the federal court "has jurisdiction of this matter." *Id.*, at 114. Lincoln, in its answer to the complaint, admitted that, through its regional offices, "it manages Westfield Village." *Id.*, at 137, 138. Lincoln did not seek to avoid liability by asserting that some other entity was responsible for managing the property.

In both their state- and federal-court complaints, the Roches stated that, "[u]pon further discovery in this case," they would "determine if additional defendant or defendants will be named." *Id.*, at 28, 54, 116. Although they engaged in some discovery concerning Lincoln's affiliates, their efforts in this regard were not extensive, Tr. of Oral Arg. 9, 14, 38–39, 48–49, 53, and at no point did they seek to join any additional defendant.

After discovery, the parties cross-moved for summary judgment. The District Court granted defendants' motion and denied plaintiffs' motion, noting that it would set forth its reasons in a forthcoming memorandum order. App. to Pet. for Cert. 20a–21a. The promised memorandum order

---

[2] Some weeks after the removal, the District Court dismissed INVESCO as a defendant. App. 112. Nothing turns on the presence or absence of INVESCO as a defending party. State of Wisconsin Investment Board, alleged owner of Westfield Village, remains a defendant-petitioner. Its status as a Wisconsin citizen for diversity purposes is not currently contested.

issued a few months later, *id.*, at 22a–40a, and the District Court entered final judgment for the defendants the same day, *id.*, at 41a.

Six days after the District Court granted defendants' motion for summary judgment, but before final judgment was entered, the Roches moved to remand the case to the state court, alleging for the first time the absence of federal subject-matter jurisdiction.[3] Specifically, the Roches alleged that Lincoln "is not a Texas Corporation, but a Partnership with one of its partners residing in the Commonwealth of Virginia." App. 226.[4] The District Court denied the remand motion, concluding that Lincoln is a Texas corporation and that removal was proper because the requisite complete diversity existed between all plaintiffs and all defendants. App. to Pet. for Cert. 84a–93a.

The Court of Appeals for the Fourth Circuit reversed and instructed the District Court to remand the case to the state court. 373 F. 3d, at 622. Although recognizing that Lincoln is a Texas citizen and a proper party to the action, *id.*, at 620–621, the Court of Appeals observed that "Lincoln operates under many different structures," *id.*, at 617. Describing Lincoln as "the nominal party and ultimate parent company," the appellate court suspected that an unidentified

---

[3] The Roches state that they preferred to litigate in state court for two principal reasons: Virginia does not permit summary judgment based on affidavits or deposition testimony, and Virginia has not adopted the rule of *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (1993), to assess expert evidence. Brief for Respondents 3, and n. 1.

[4] Confusion about Lincoln's structure is understandable. Real estate businesses typically operate through a web of affiliated entities, see Brief for Real Estate Roundtable et al. as *Amici Curiae* 6–13, and certain Lincoln-affiliated responders to the Roches' discovery inquiries stated that Lincoln was a partnership, *e. g.*, App. 175, 176, 179. In response to the Roches' motion to remand, Lincoln proffered its 1979 Texas incorporation papers and an affidavit attesting to its status as a Texas corporation. *Id.*, at 238–246. That matter is no longer debated; at oral argument, counsel for the Roches acknowledged that Lincoln is a Texas corporation. Tr. of Oral Arg. 40–41.

"Virginia subsidiary, be it a partnership, corporation or otherwise, rather than the Texas parent" was "the real and substantial party in interest." *Id.*, at 620–621. Lincoln, the party invoking federal-court jurisdiction, had not demonstrated the nonexistence of "the Virginia sub-'partnership,'" the Court of Appeals reasoned, *id.*, at 621, and therefore had not met its burden of establishing diversity, *id.*, at 621–622.

We granted certiorari, 543 U. S. 1186 (2005), to resolve a division among the Circuits on the question whether an entity not named or joined as a defendant can nonetheless be deemed a real party in interest whose presence would destroy diversity. Compare 373 F. 3d, at 620–622, with *Plains Growers, Inc.* v. *Ickes-Braun Glasshouses, Inc.*, 474 F. 2d 250, 252 (CA5 1973) ("The citizenship of one who has an interest in the lawsuit but who has not been made a party . . . by plaintiff cannot be used by plaintiff on a motion to remand to defeat diversity jurisdiction."), and *Simpson* v. *Providence Washington Ins. Group*, 608 F. 2d 1171, 1173–1175 (CA9 1979) (Kennedy, J.) (upholding removal where Alaska plaintiff sued Rhode Island parent company without joining as well potentially liable Alaska subsidiary, and the parties did not act collusively to create diversity jurisdiction).

## II

The Court of Appeals correctly identified Lincoln as a proper party to the action, but it erred in insisting that some other entity affiliated with Lincoln should have been joined as a codefendant, and that it was Lincoln's obligation to name that entity and show that its joinder would not destroy diversity.

We stress, first, that, at this stage of the case, the existence of complete diversity between the Roches and Lincoln is not in doubt. The Roches, both citizens of Virginia, acknowledge that Lincoln is indeed a corporation, not a partnership, and that Lincoln is chartered in and has its principal place of business in Texas. Tr. of Oral Arg. 40–41; see App.

114 ("Upon information and belief, Lincoln Property Company is a corporation with corporate headquarters [in] Texas."); 373 F. 3d, at 620. Accordingly, for jurisdictional purposes, Lincoln is a citizen of Texas and of no other State. 28 U. S. C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").

We turn now to the reasons why the Fourth Circuit erred in determining that diversity jurisdiction was not proved by the removing parties. 373 F. 3d, at 612 (concluding that "[d]efendants failed to carry their burden of proof with respect to their allegedly diverse citizenship"). The principal federal statute governing diversity jurisdiction, 28 U. S. C. § 1332, gives federal district courts original jurisdiction of all civil actions "between . . . citizens of different States" where the amount in controversy exceeds $75,000. § 1332(a)(1).[5] Since *Strawbridge* v. *Curtiss*, 3 Cranch 267 (1806), we have read the statutory formulation "between . . . citizens of different States" to require complete diversity between all plaintiffs and all defendants. *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 68 (1996); cf. *State Farm Fire & Casualty Co.* v. *Tashire*, 386 U. S. 523, 530–531 (1967) (explaining that complete diversity is not constitutionally required and upholding interpleader under § 1335 based on minimal diversity, *i. e.*, diversity between two or more adverse parties).

While § 1332 allows plaintiffs to invoke the federal courts' diversity jurisdiction, § 1441 gives defendants a corresponding opportunity. Section 1441(a) states: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The scales are not

---

[5] The Roches sought damages well in excess of the jurisdictional minimum. App. 40–50, 66–75, 131–134.

evenly balanced, however. An in-state plaintiff may invoke diversity jurisdiction, but § 1441(b) bars removal on the basis of diversity if any "part[y] in interest properly joined and served as [a] defendan[t] is a citizen of the State in which [the] action is brought."[6] In the instant case, Virginia plaintiffs Christophe and Juanita Roche joined and served no Virginian as a party defendant. Hence the action qualified for the removal defendants effected.

Neither Federal Rule of Civil Procedure 17(a), captioned "Real Party in Interest," nor Rule 19, captioned "Joinder of Persons Needed for Just Adjudication," requires plaintiffs or defendants to name and join any additional parties to this action. Both Rules, we note, address party joinder, not federal-court subject-matter jurisdiction. See Rule 82 ("[The Federal Rules of Civil Procedure] shall not be construed to extend or limit the jurisdiction of the United States district courts . . . ."); Advisory Committee's Notes on Fed. Rule Civ. Proc. 19, 28 U. S. C. App., pp. 696–698. Rule 17(a) directs that "[e]very action shall be *prosecuted* in the name of the real party in interest." (Emphasis added.) That Rule, as its text displays, speaks to joinder of *plaintiffs*, not defendants.

Rule 19 provides for the joinder of parties who should or must take part in the litigation to achieve a "[j]ust [a]djudication." See *Provident Tradesmens Bank & Trust Co.* v. *Patterson*, 390 U. S. 102, 118–123 (1968). The Roches place no reliance on Rule 19 and maintain that the Rule "played no part, explicitly or implicitly, in the Court of Appeals' conclusion." Brief for Respondents 36. Given Lincoln's admission that it managed Westfield Village when mold contam-

---

[6] Although we have not addressed the issue, several lower courts have held that the presence of a diverse but in-state defendant in a removed action is a "procedural" defect, not a "jurisdictional" bar, and that the defect is waived if not timely raised by the plaintiff. See 14C C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3739, pp. 451–457, and nn. 32–37 (3d ed. 1998).

inated the Roches' apartment, see *supra*, at 86, it does indeed appear that no absent person, formally or practically, was "[n]eeded for [j]ust [a]djudication." Fed. Rule Civ. Proc. 19; cf. *Simpson*, 608 F. 2d, at 1174 (diverse corporate defendant accepted full liability for any eventual adverse judgment; nondiverse subsidiary need not be joined as a defendant, although arguably it had joint liability with its parent); 16 J. Moore et al., Moore's Federal Practice § 107.14[2][c], p. 107–67 (3d ed. 2005) (hereinafter Moore) ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties.").

While Rule 17(a) applies only to joinder of parties who assert claims, the Court of Appeals and the Roches draw from decisions of this Court a jurisdictional "real parties to the controversy" rule applicable in diversity cases to complaining and defending parties alike. See *Navarro Savings Assn.* v. *Lee*, 446 U. S. 458, 462, n. 9 (1980) (citing Note, Diversity Jurisdiction over Unincorporated Business Entities: The Real Party in Interest as a Jurisdictional Rule, 56 Texas L. Rev. 243, 247–250 (1978)). But no decision called to our attention supports the burden the Court of Appeals placed on a properly joined defendant to negate the existence of a potential codefendant whose presence in the action would destroy diversity.

III

Our decisions employing "real party to the controversy" terminology in describing or explaining who counts and who can be discounted for diversity purposes bear scant resemblance to the action the Roches have commenced. No party here has been "improperly or collusively" named solely to create federal jurisdiction, see 28 U. S. C. § 1359 ("A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."); *Kramer* v. *Caribbean Mills, Inc.*, 394 U. S. 823, 830

(1969) (assignment for collection only, motivated by desire to make diversity jurisdiction available, falls within the "very core" of § 1359); *Little* v. *Giles*, 118 U. S. 596, 600–607 (1886) (where land was purportedly sold to out-of-state farmer but no money or deed changed hands, quiet title action could not be maintained based on farmer's diverse citizenship), nor to defeat it, see *Chesapeake & Ohio R. Co.* v. *Cockrell*, 232 U. S. 146, 152 (1914) (diverse defendants, upon showing that joinder of nondiverse party was "without right and made in bad faith," may successfully remove the action to federal court).

Nor are the Roches aided by cases in which actions against a state agency have been regarded as suits against the State itself. See, *e. g.*, *State Highway Comm'n of Wyo.* v. *Utah Constr. Co.*, 278 U. S. 194, 199–200 (1929) ("[State] Commission was but the arm or *alter ego* of the State with no funds or ability to respond in damages."). Decisions of this genre are bottomed on this Court's recognition of a State's asserted Eleventh Amendment right not to be haled into federal court. See, *e. g.*, *Federal Maritime Comm'n* v. *South Carolina Ports Authority*, 535 U. S. 743, 769 (2002).[7] They are not pertinent to suits between private parties.

Unlike cases in which a party was named to satisfy state pleading rules, *e. g.*, *McNutt ex rel. Leggett, Smith, & Lawrence* v. *Bland*, 2 How. 9, 14 (1844), or was joined only as designated performer of a ministerial act, *e. g.*, *Walden* v. *Skinner*, 101 U. S. 577, 589 (1880), or otherwise had no control of, impact on, or stake in the controversy, *e. g.*, *Wood* v. *Davis*, 18 How. 467, 469–470 (1856), Lincoln has a vital inter-

---

[7] Similarly inapposite are cases invoking our original jurisdiction in which we have inquired into the capacity in which a sovereign party appears. See, *e. g.*, *Oklahoma ex rel. Johnson* v. *Cook*, 304 U. S. 387, 395–396 (1938) (original jurisdiction improper where State was acting as trustee for its citizens); *United States Fidelity & Guaranty Co.* v. *United States ex rel. Kenyon*, 204 U. S. 349, 358 (1907) (original jurisdiction upheld where United States was "a real and not a mere nominal plaintiff").

est in this case.[8]  Indeed, Lincoln accepted responsibility, in the event that the Roches prevailed on the merits of their claims, by admitting that, "[since 1996,] it has managed Westfield Village Apartments."  App. 137.  A named defendant who admits involvement in the controversy and would be liable to pay a resulting judgment is not "nominal" in any sense except that it is named in the complaint.  Cf. *Knapp* v. *Railroad Co.*, 20 Wall. 117, 122 (1874).

In any event, we emphasize, the Fourth Circuit had no warrant in this case to inquire whether some other person might have been joined as an additional or substitute defendant.  See *ibid.* (federal courts should not "inquir[e] outside of the case in order to ascertain whether some other person may not have an equitable interest in the cause of action"); *Little*, 118 U. S., at 603 (if named party's interest is real, the fact that other interested parties are not joined "will not affect the jurisdiction of the [federal courts]"); 16 Moore § 107.14[2][c], p. 107–67 ("Ordinarily, a court will not interfere with the consequences of a plaintiff's selection in naming parties, unless the plaintiff has impermissibly manufactured diversity or used an unacceptable device to defeat diversity.").

Congress, empowered to prescribe the jurisdiction of the federal courts, sometimes has specified that a named party's own citizenship does not determine its diverse status.  Thus, as a procedural matter, executors, administrators, and guardians "may sue in [their] own name[s] without joining the party for whose benefit the action is brought."  Rule 17(a).  As to diversity jurisdiction, however, § 1332(c)(2) directs that "the legal representative of [a decedent's]

---

[8] The Roches' complaints cast Lincoln as the primary tortfeasor, alleging that Lincoln engaged in "a conscious and predetermined plan" to conceal the hazards of mold from apartment residents.  App. 34, 60.  Further, the Roches alleged that Lincoln ignored numerous mold-related maintenance requests they "personally" made to Lincoln, *id.*, at 29, 55, inquiries that, if followed up, might have prevented or lessened their injuries.

estate . . . shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent." Congress has also provided that in direct action suits against insurers to which the insured is not made a party, the "insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business." § 1332(c)(1).

But Congress surely has not directed that a corporation, for diversity-of-citizenship purposes, shall be deemed to have acquired the citizenship of all or any of its affiliates. For cases of the kind the Roches have instituted, Congress has provided simply and only this instruction: "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Ibid.* The jurisdictional rule governing here is unambiguous and it is not amenable to judicial enlargement. Under § 1332(c)(1), Lincoln is a citizen of Texas alone, and under § 1441(a) and (b), this case was properly removed.

\* \* \*

The Roches sued the entity they thought responsible for managing their apartment. Lincoln affirmed that it was so responsible. Complete diversity existed. The potential liability of other parties was a matter plaintiffs' counsel might have assiduously explored through discovery devices. It was not incumbent on Lincoln to propose as additional defendants persons the Roches, as masters of their complaint, permissively might have joined.

For the reasons stated, the judgment of the United States Court of Appeals for the Fourth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*