Dardanuis COLEMAN, Plaintiff,

v.

INDYMAC VENTURE, LLC., Defendant.

Case No. 2:12–cv–2125–JTF–dkv.

United States District Court, W.D. Tennessee, Western Division.

Aug. 20, 2013.

Dardanuis Coleman, Collierville, TN, pro se.

## ORDER ADOPTING REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

JOHN T. FOWLKES, JR., District Judge.

Before the Court is the Plaintiff's "Petition to Rescind Foreclosure, Complaint for Damages and Emergency Stay," filed on February 15, 2012. (DE # 1). On March 25, 2013, the case was referred to the Magistrate Judge pursuant to 28 U.S.C. §§ 636–639. (DE # 4). On June 12, 2013, the Magistrate Judge entered her report, recommending that the case be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2). (DE # 5) No objections have been filed to the Magistrate Judge's Report and Recommendation.

After reviewing the Magistrate Judge's Report and Recommendation and the entire record in this case, the Court hereby ADOPTS the Magistrate Judge's Report and Recommendation.

IT IS THEREFORE ORDERED that the case be DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).

## REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

DIANE K. VESCOVO, United States Magistrate Judge.

On February 15, 2012, the plaintiff, Dardanuis Coleman ("Coleman"), a resident of Shelby County, Tennessee, filed a *pro se* "Petition to Rescind Foreclosure, Complaint for Damages and Emergency Stay," (Compl., Docket Entry ("D.E.") 1), accompanied by a motion seeking leave to proceed *in forma pauperis,* (D.E. 2.) On February 17, 2012, the court issued an order granting Coleman leave to proceed *in forma pauperis,* (D.E. 3), and referred the case to the *pro se* staff attorney for screening pursuant to Local Rule 4.1. This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Reference, D.E. 4.). For the reasons that follow, it is recommended that this case be dismissed for failure to state a claim.

## I. PROPOSED FINDINGS OF FACT

This is an action to rescind a nonjudicial foreclosure of real property located at 309 North Monterey Cove, Collierville, Tennessee 38017 ("property"). The complaint states that on January 5, 2006, Coleman and his wife, as tenants by the entirety, obtained a construction loan from Indymac Bank in the amount of $714,000. (Compl., D.E. 1 ¶ 6.) According to the public records of the Shelby County Registrar of Deeds, a Construction Deed of Trust and Security Agreement ("Deed of Trust") dated December 21, 2005, was signed by Bavarian A. Coleman and Dardanuis L. Coleman and recorded on January 5, 2006, as Instrument No. 06003331. This document states that the borrower on the construction loan was Coleman's wife, Bavarian A.

Coleman ("Mrs. Coleman"). The complaint states that the loan was executed at the office of Carlton Orange, Esq. at Orange Law Firm PC in Memphis, Tennessee. (*Id.* ¶ 10.) The Deed of Trust states that the borrower, Mrs. Coleman, transferred to Trustee Carlton W. Orange, Esq., the property, as security for the repayment of the loan.

The complaint alleges that in 2006 Coleman began having difficulties making payments on the loan and he attempted to modify the loan agreement. (*Id.* ¶¶ 11–12.) Indymac Bank denied the loan modification, the Coleman's last draw on the loan was in February 2007, and the last payment Coleman made on the loan was in April 2007. (*Id.* ¶¶ 14–15.) Coleman then "commenced . . . the process of reapplying for a loan mortgage." The complaint alleges that on July 13, 2007, Indymac Bank sent to Coleman requests for further information "in order for his loan modification request to be processed" to which Coleman responded promptly. (*Id.* ¶¶ 20–21.) Coleman continued to use his personal funds to build the house while Indymac Bank sent an inspector to inspect the work done on the house at least four times between the summer of 2007 and the

spring of 2010. (*Id.* ¶¶ 19, 23.) Coleman alleges that he had no notice of any impending foreclosure although he was regularly in touch with Indymac Bank to discuss the loan modification application. (*Id.* ¶ 24.)

The complaint alleges that Indymac Bank organized Indymac Venture LLC ("Indymac Venture"), and that Indymac Venture conducted a foreclosure sale of the property on June 9, 2010.[1] (*Id.* ¶¶ 25, 27.) Indymac Venture "purportedly" advertised the foreclosure sale on three dates in the Memphis Commercial Appeal newspaper: May 4, May 11, and May 18, 2010. (*Id.* ¶ 26.) According to the complaint, on June 9, 2010, Indymac Venture sold the property to Indymac Bank at the foreclosure sale. (*Id.* ¶ 27.)[2] Coleman found out about the foreclosure and transfer of deed on June 15, 2010. (*Id.* ¶ 30.) On January 6, 2011, Coleman was notified of an action to evict him and his wife from the property and of a hearing on the matter in Shelby County General Sessions Court on February 7, 2011. (*Id.* ¶ 31.)[3]

The complaint sets forth the following claims for relief: (1) Count I—Rescission of Foreclosure Sale; (2) Count II—Fair Debt Collection Practices Act Violation

---

1. According to the public records of the Shelby County Register, Indymac Bank assigned the loan to Indymac Venture on June 25, 2009, as stated in the Corporation Assignment of Deed of Trust recorded as Instrument No. 09106717. The Deed of Trust, Instrument No. 06003331, in paragraph 24 titled "Substitute Trustee," states that "[l]ender, at its option, may from time to time remove Trustee and appoint successor trustee." Pursuant to that provision, on May 17, 2010, Indymac Venture executed a Substitution of Trustee document, recorded in the Shelby County Register as Instrument No. 10052771, appointing Arnold M. Weiss, Valerie Ann Spicer, and Elizabeth A. Cash as substitute trustees. This document states that at that time Mrs. Coleman was in default on the payment of the loan.

2. However, the Substitute Trustee's Deed, recorded with the Shelby County Register as Instrument No. 10064025, states that the Substitute Trustee Elizabeth A. Cash conveyed the property to Indymac Venture, which was the highest bidder at the foreclosure sale, on June 9, 2010 for $128,006.

3. This February 7, 2011 hearing, in General Sessions Case No. 1470407, did not occur due to voluntary nonsuit by the plaintiff. However, Coleman was issued another Detainer Warrant, Case No. 1495711, on May 26, 2011. On November 5, 2012, a Writ of Possession required Coleman to restore possession of the property to Indymac Venture.

("FDCPA"); (3) Count III—Tennessee Consumer Protection Act Violation ("TCPA"); (4) Count IV—Tennessee Home Loan Protection Act ("THLPA"); and (5) Count V—Unlawful Entry. (*Id.* ¶¶ 32–49.) Coleman seeks a temporary restraining order prohibiting Indymac Venture from taking possession or initiating legal action to take possession of the property, rescission of the foreclosure of the property, and damages arising under the FDCPA, TCPA, and unlawful entry under T.C.A § 29–18–101. (*Id.* ¶¶ 50–58.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. *28 U.S.C. § 1915(e)(2) Screening*

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. This report and recommendation will constitute the court's screening. The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action—

(i) is frivolous or malicious;

fails to state a claim on which relief may be granted; or

seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

### B. *Standard of Review for Failure to State a Claim*

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal,* 556 U.S. 662, 678–679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), are applied. *Hill v. Lappin,* 630 F.3d 468, 470–71 (6th Cir.2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir.2011) (quoting *Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937) (alteration in original). "[P]leadings that ... are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937; *see also Twombly,* 550 U.S. at 555 n. 3, 127 S.Ct. 1955 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

 "*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams,* 631 F.3d at 383 (internal quotation marks omitted). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989); *see also Brown v. Matauszak,* 415 Fed.Appx. 608, 613 (6th Cir.2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); *Payne v. Sec'y of Treas.,* 73 Fed.Appx. 836, 837 (6th Cir.2003) (affirming sua sponte dismissal of complaint pursuant to Fed.

R.Civ.P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford,* 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); *Young Bok Song v. Gipson,* 423 Fed.Appx. 506, 510 (6th Cir.2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

## C. *Subject–Matter Jurisdiction*

 As an initial matter, the court must determine whether it has subject-matter jurisdiction over this action. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *see also Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("Federal courts are courts of limited jurisdiction. The charac-

ter of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."); *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) ("It is a fundamental precept that federal courts are courts of limited jurisdiction."). Federal courts are obliged to act *sua sponte* whenever a question about jurisdiction arises. *See, e.g., Ins. Corp. of Ireland, Ltd.,* 456 U.S. at 702, 102 S.Ct. 2099 ("A court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion."); *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 287 n. 10, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.,* 556 F.3d 459, 465 (6th Cir.2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte.*"). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

In his complaint, Coleman alleges that "[j]urisdiction is conferred on this Court by T.C.A. § 16–1 1401." (Compl., D.E. 1 ¶ 2.) As there is no such statute in existence, it does not confer subject-matter jurisdiction on the court.

 Although the complaint does not specifically allege diversity jurisdiction, the complaint states the citizenship of the parties. (*Id.* ¶¶ 4–5.) According to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." Diversity of

citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a). A federal court has jurisdiction under Section 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005) (citations omitted). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n. 20 (D.C.Cir.1983); *see also Johnson v. New York*, 315 Fed.Appx. 394, 395 (3d Cir.2009) (per curiam); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987) (complaint did not properly allege diversity jurisdiction); *Leys v. Lowe's Home Ctrs., Inc.*, 601 F.Supp.2d 908, 912–13 (W.D.Mich.2009) (complaint and notice of removal did not adequately establish diversity jurisdiction); *Ellis v. Kaye–Kibbey*, No. 1:07–cv–910, 2008 WL 2696891, at *2–3 (W.D.Mich. July 1, 2008) (dismissing complaint for failure adequately to allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1208 (3d ed.2004). Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

■ The complaint alleges that Coleman "is a citizens [sic] and residents [sic] of Tennessee." (Compl., D.E. 1 ¶ 4.) The complaint alleges that Indymac Venture is a Delaware limited liability company with principal offices at Corporation Trust Center 1209 Orange Street Wilmington, DE 19801. (*Id.* ¶ 5.) The Corporation Assignment of Deed of Trust, however, lists Indymac Venture's address as Indymac Mortgage Services, Consumer Lending Division, 888 E. Walnut St., Pasadena, CA 91101. Thus, Indymac Venture is incorporated in Delaware and has its principal place of business in California or in Delaware, either of which would suffice for purposes of subject-matter jurisdiction because the parties remain diverse. The amount in controversy exceeds the $75,000 threshold limit. Therefore, Coleman has pled sufficient facts to establish diversity jurisdiction.

Because there is diversity jurisdiction, it is not necessary to consider whether there might be subject-matter jurisdiction under 28 U.S.C. § 1331, which provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

### D. *Standing*

■ Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. The applicable statute provides that "[i]n all courts of the United States, the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Id.* The federal courts have long held that Section 1654 preserves a party's right to proceed *pro se*, but only on his own claims; only a licensed attorney may represent other persons. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir.1969); *accord Shepherd v. Wellman*, 313 F.3d 963, 970–71 (6th Cir.2003) (stating that *pro se* party may not prosecute a wrongful death action on behalf of other beneficiaries). The Sixth Circuit considers this issue one of lack of standing. *See Oliver v. Pogats*, No. 91–1717, 1992

WL 76951, at *1 (6th Cir. Apr. 13, 1992). Lack of standing implicates the case-or-controversy requirement of Article III, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), and, therefore, is a threshold issue in every federal case. *See Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469–70 (6th Cir.2007).

In the caption of the complaint, Coleman lists the plaintiffs as "Dardanuis Coleman, et ux." (Compl., D.E. 1.) However, the complaint is only signed by him. (*Id.*) Because Coleman cannot represent Mrs. Coleman, he does not have standing to sue on her behalf.

Further, Coleman does not have standing to sue as a borrower/debtor under the Deed of Trust (Instrument No. 06003331) because Mrs. Coleman is the only borrower listed under that agreement. According to paragraph 15 of the Deed of Trust, Indymac Bank is required to provide notice of foreclosure only to the "Borrower" of the loan. Coleman, however, is listed as cosigner on the Deed of Trust. Under paragraph 13 of the Deed of Trust, Coleman as a cosigner, "is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the property [and] is not personally obligated to pay the sums secured by this Security Instrument." Thus, Coleman's action of co-signing the agreement does not vest him of the same rights that the borrower/debtor has under the agreement.

E. *Claim for Violation of the FDCPA, 15 U.S.C. § 1692 et seq.*

Coleman alleges that Indymac Venture's "failure to provide written notice to the Coleman's of certain of their rights as debtors under federal law constitutes a violation" of the FDCPA. (Compl., D.E. 1 ¶ 40.) As discussed above, to the extent Coleman is attempting to represent Mrs.

Coleman's claim as a debtor, he cannot do so. The court will therefore consider only whether Coleman's own claim is plausible under the FDCPA.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To be held liable under the FDCPA, a defendant must be a "debt collector" within its meaning. Notably, the FDCPA distinguishes between the term "creditor" and "debt collector." A creditor is "any person who offers or extends credit creating a debt or to who a debt is owed", while the term "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(4), (6). It is "well-settled" generally that "a creditor is not a debt collector for the purposes of FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *MacDermid v. Discover Fin. Serv.*, 488 F.3d 721, 735 (6th Cir.2007) (quoting *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 794 (W.D.Ky.2003)). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). In other words, the term "debt collector" does not include "the consumer's creditors … or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir.1996) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)).

Indymac Bank assigned the Deed of Trust, executed by Mrs. Coleman, to Indymac Venture on June 25, 2009.[4] This document does not state whether the debt was in default at that time. If the debt was in default at the time of the assignment, Indymac Venture would be considered a "debt collector" under the FDCPA. However, the complaint does not allege enough facts to show whether the debt was in default at the time it was assigned to Indymac Venture.[5]

■ Even if Indymac Venture is considered a "debt collector" under the FDCPA, Coleman is not a debtor/consumer under the Deed of Trust, and therefore he has no cognizable claim under the FDCPA. The FDCPA provides that Indymac Venture, upon being assigned the debt, must communicate with a consumer in connection with the collection of a debt and send the consumer a written notice containing information about the debt. 15 U.S.C. § 1692g. The FDCPA defines a consumer as "a person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The Deed of Trust lists Mrs. Coleman, but not Coleman himself, as a borrower. Further, per paragraph 13 of the Deed of Trust, Coleman "is not personally obligated to pay the sums secured by this Security Instrument." Therefore, Coleman is not a "consumer," and therefore has failed to state a viable claim under the FDCPA.

## F. *The State–Law Claims*

Coleman seeks rescission of the foreclosure sale (Compl., D.E. 1 ¶¶ 32–38), and

purports to assert claims under the TCPA, (*Id.* ¶¶ 41–45), THLPA (*Id.* ¶¶ 46–47), and Tennessee Code 29–18–101 for unlawful entry, (*Id.* ¶¶ 48–49.) The state-law claims should also be dismissed because the complaint fails to state any plausible claims under state law.

### 1. *Rescission of Foreclosure Sale*

■ Coleman requests rescission of the foreclosure sale for three main reasons. First, Coleman alleges that Indymac Venture "deceived the Coleman [sic] by knowingly letting them continue to put there [sic] life savings and inheritance in the house for four years by conducting inspections that allowed the value to increase after they stopped funding the house." (*Id.* ¶ 33.) This fact alone does not suffice to rescind the foreclosure sale. The agreement between Mrs. Coleman and Indymac Bank did not provide for payments in installments. Thus, Mrs. Coleman had already received all the funding for the house. Mrs. Coleman signed a promissory note on December 21, 2005, promising to pay back $714,000.00 that she received from Indymac Bank. Indymac Venture has the right under the Deed of Trust, paragraph 7, to routinely inspect the construction, and thus such action does not constitute an unfair or deceiving act.

■ Second, Coleman alleges that the foreclosure sale should be rescinded because Indymac Venture failed to provide notice of the foreclosure sale as stated in the Deed of Trust and applicable law. (*Id.* ¶¶ 35–37.) The Deed of Trust, paragraph 15, states that Indymac Bank is required

---

**4.** The Corporation Assignment of Deed of Trust is recorded with the office of Shelby County Register as Instrument 09106717.

**5.** The complaint alleges that "Mr. Coleman's" last payment to Indymac was April 2007, (Compl., D.E. 1, ¶ 150, but the complaint does not allege the exact date when Indymac Bank

or Indymac Venture declared default). The earliest record of default is found in The Substitution of Trustee, Instrument No. 10052771, which states that at the time of the substitution of trustees on May 17, 2010, the debt was in default.

to send a notice of foreclosure only to the borrower. Because Coleman is not a borrower, Indymac Venture is not required to send him a foreclosure notice. Further, under applicable Tennessee law, "[i]n any sale of land to foreclose a deed of trust, mortgage, or other lien securing the payment of money ... the trustee or other party that sells the property shall send to the debtor and any co-debtor a copy of the notice." Tenn.Code Ann. § 35–5–101(e). Because Coleman is not a debtor or a co-debtor, Indymac Venture is not required, under Tennessee law, to send him a notice of the foreclosure sale.

 Third, Coleman alleges that the high value of the property compared to the foreclosure sale price "is inequitable to permit the sale to stand and the sale should be rescinded." (*Id.* ¶ 38.) Coleman alleges that this difference is in excess of $400,000.00. (*Id.*) The burden of proof imposed upon a party seeking rescission of a foreclosure sale is substantial, and courts do not set aside foreclosure sales lightly. *Young v. Bank One, N.A.,* No: M2003–01359–COA–R3–CV, 2004 WL 2098284 (Tenn.Ct.App., Sep. 20, 2004). If a foreclosure sale is legally held, there must be some evidence of irregularity, misconduct, fraud or unfairness on the part of the trustee or mortgagee that caused or contributed to inadequate price, before a court of equity will set aside the sale. *Holt v. Citizens Cent. Bank,* 688 S.W.2d 414, 416 (Tenn.1984). "Even when the sale price is shockingly disproportionate to the actual value of the property the court will not set the sale aside." *Orlando Residence, Ltd. v. Nashville Lodging Co.,* 104 S.W.3d 848, 855 (Tenn.Ct.App.2002)(citing *Holt,* 688 S.W.2d at 416). Coleman has not alleged any fraud or irregularity that could have contributed to an inadequate sale price. Although Coleman alleges a difference in excess of $400,000, he does not allege any

actual misconduct such as would justify setting aside the foreclosure sale. As such, Coleman has failed to state a claim for rescission of the sale. .

### 2. *Claim for Violation of TCPA*

The TCPA is intended to "protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce." Tenn.Code Ann. § 47–18–102(2). The TCPA creates a cause of action for any person who has suffered loss of money or property as a result of use by another person of an unfair or deceptive act or practice. Tenn. Code Ann. § 47–18–109.

In support of his TCPA claim, Coleman alleges that Indymac Venture led him to believe that "he was on the path to a successful permanent loan modification," while they had already foreclosed on the property. (Compl., D.E. 1 ¶¶ 42–43.) Coleman alleges that the delay in notification about the loan modification constitutes "an unfair and deceptive practice" under the TCPA. (*Id.* ¶ 43.) Further, Coleman alleges that Indymac Venture's "acts, policies, and practices constitute unfair or deceptive acts" under the TCPA. (*Id.* ¶ 44.)

 "Courts applying the TCPA have held that a plaintiff must plead with particularity the circumstances of the unfair or deceptive conduct." *Peoples v. Bank of Am.,* No. 11–2868–STA, 2012 WL 601777, at *9 (W.D.Tenn. Feb. 22, 2012) (citations omitted). As for the loan modification proceedings, Coleman has not met the heightened pleading requirements for stating a claim for violation of TCPA. Coleman does not allege with *particularity* the circumstances of the unfair or deceptive conduct during his loan modification proceedings. Coleman has alleged that he applied for a loan modification in 2006 and was denied. (Compl., D.E. 1 ¶¶ 12–14.)

Coleman applied for a loan modification for a second time on July 25, 2007, and he alleges he was "regularly in communication with INDYMAC representatives to discuss the status of his loan modification." (*Id.* ¶¶ 20–21, 24.) Coleman does not allege that Indymac Venture wrongfully rejected his application, but only that Indymac Venture acted deceptively by leading him to "believe that he was on the path to a successful permanent loan modification" and "delaying notification about [its] status." (*Id.* ¶¶ 42–43.) These allegations are conclusory and lack particularity, and are thus insufficient to state a TCPA claim for the conduct surrounding the loan modification.[6] Similarly, Coleman's allegations that Indymac Venture's "acts, policies, and practices constitute unfair or deceptive acts" in violation of the TCPA, are conclusory because they do not state with particularity Indymac Venture's deceptive conduct.

▮ Coleman further alleges that the lack of notice of the foreclosure sale constitutes "an unfair and deceptive practice" under the TCPA. (*Id.* ¶ 43.) Foreclosure proceedings, in particular, are exempt from the TCPA: courts in Tennessee "have consistently held that the TCPA does not reach the manner in which a lender conducts foreclosure proceedings." *Peoples v. Bank of Am.*, No. 11–2868–STA, 2012 WL 601777, at *9 (W.D.Tenn. Feb. 22, 2012) (citations omitted); *Simms v. CIT Grp./Consumer Fin., Sun Mortg. Co.*, No. 08–2655–STA, 2009 WL 973011, at *9 (W.D.Tenn. Apr. 9, 2009) (finding that

TCPA does not apply to deceptive conduct during foreclosure proceedings). This includes the manner in which the consumer receives notice of the foreclosure sale. *Peoples*, 2012 WL 601777, at *10. Thus, the TCPA does not apply to Coleman's claim for lack of notice about the foreclosure.

▮ Lastly, claims under the TCPA "shall be brought within one (1) year from a person's discovery of the unlawful act or practice." Tenn.Code Ann. § 47–18–110. Even if the pleadings met the heightened standard for TCPA claims, Coleman's claim would be barred due to the one-year statute of limitations. Coleman alleges that he discovered the foreclosure on or about June 15, 2010. (*Id.* ¶ 30.) However, he brought the suit in federal court on February 15, 2012, more than a year after he discovered the alleged unfair and deceptive practices. Even if Coleman otherwise had a claim under the TCPA, any such claim would be time-barred.

### 3. *Claim for Violation of THLPA*

In support of his THLPA claim, Coleman alleges that the loan from Indymac Bank was a "high cost home loan" as defined in THLPA, Tenn.Code Ann. § 45–20–102. (*Id.* ¶ 9.) Coleman alleges that Indymac Venture violated Tenn.Code Ann. § 45–20–104 by not allowing Coleman to cure the default prior to the foreclosure sale. (*Id.* ¶ 47.)

▮ THLPA only applies to "home loans." Tenn.Code Ann. § 45–20–111.

---

**6.** The facts in this case are very similar to the facts in *Peoples v. Bank of Am.*, No. 11–2868–STA, 2012 WL 601777 (W.D.Tenn. Feb. 22, 2012). In *Peoples,* the plaintiff alleged that he "applied for a loan modification [and] that Defendant acted deceptively by soliciting continued payments on the note and by having Plaintiff complete loan modification paperwork." *Peoples,* 2012 WL 601777, at *9. The

court held that these allegations were not enough to satisfy the particularity requirement of a TCPA claim because the plaintiff did not allege "the timing of his application for loan modification," any "specifics of any representations made by Defendant," or that "Defendant wrongfully rejected his application." *Id.*

THLPA excludes from its definition of a "home loan" any loan that is considered a "construction loan." Tenn.Code Ann. § 45–20–102(9)(D). Coleman's claim under the THLPA fails because the loan does not qualify as a "home loan". The complaint states that "the Coleman's [sic] ... obtain[ed] a construction loan" from Indymac Bank. (Compl., D.E. 1 ¶ 6.) Further, the Deed of Trust also indicates that the loan is a "construction loan." [7] As such, the loan is exempt from the definition of a "home loan," and therefore the THLPA does not apply. Additionally, the THLPA only applies to home loans applied for and closed after January 1, 2007. Tenn.Code Ann. § 45–20–111. According to the Deed of Trust, the borrower signed the promissory note on the loan on December 21, 2005. Because the THLPA only applies to loans closed after January 1, 2007, Coleman has no cause of action under the THLPA.

#### 4. *Unlawful Entry Claim*

The unlawful entry claim should also be dismissed because the matter has been determined in Shelby County General Sessions Court. On May 26, 2011, Indymac Venture filed a complaint in that court against Coleman and his wife for forcible and unlawful entry and detainer of the property.[8] A trial was held on August 3, 2011, where judgment was rendered allowing Indymac Venture to recover the property from the Colemans. On November 5, 2012, a Writ of Possession gave Indymac Venture possession of the property and ordered the sheriff to remove the Colemans from the premises. The Writ of Possession was executed by the sheriff on November 15, 2012.

A federal court exercising its diversity jurisdiction applies the choice of law rules of the forum state, in this case, Tennessee. *Pedicini v. Life Ins. Co. of Ala.*, 682 F.3d 522, 526 (6th Cir.2012); *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 303 n. 4 (6th Cir.2011); *Montgomery v. Wyeth*, 580 F.3d 455, 459 (Tenn.2009). "Generally, Tennessee follows the rule of lex loci contractus, meaning that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent, including a valid choice of law provision in the parties' contract." *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F.Supp.2d 786, 801 (W.D.Tenn.2011) (internal quotation marks & footnote omitted). The court will apply Tennessee substantive law in this case.

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)(internal quotation marks, ellipses & citation omitted).

The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts. Thus, res judicata and collateral estoppel not

---

**7.** The Deed of Trust contains several references to a "construction loan." First, the Deed of Trust is titled "Construction Deed of Trust and Security Agreement." Further, paragraph (H) on page 2 of the Deed of Trust, indicates that the borrower is executing a "Residential Construction Loan Rider." The Deed of Trust indicates that the Colemans' contractor in building the house was Riverhill Homes, Inc.

**8.** The disposition of this case in found in General Sessions Shelby County, Tennessee, Docket No. 1495711.

only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system. *Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Thus, "Congress had specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 96, 101 S.Ct. 411; see also 28 U.S.C. § 1738.

■■■ The Tennessee Court of Appeals has explained the distinction between collateral estoppel and res judicata:

> Collateral estoppel and res judicata are related doctrines; however, they operate in separate ways to prevent inconsistent judicial decisions. Res judicata is said to act "like a bludgeon, indiscriminately smashing all efforts of a party to relitigate events that have already been litigated and decided in a prior suit." Joseph W. Glannon, *Civil Procedure: Examples and Explanations* 485 (4th ed.2001). Collateral estoppel, on the other hand, "operates like a scalpel, dissecting a lawsuit into its various issues and surgically removing form reconsideration any that have been properly decided in a prior action." *Id.*
>
> Res judicata serves to preclude *claims* that have once been litigated or could have been litigated. 22 *Tenn. Juris., Res Judicata* § 2 (2007). "Claim" is defined to include all rights arising out of a single transaction. *Glannon,* at 487 (citing Restatement (Second) of Judgments § 24 (1982)). Collateral estoppel, on the other hand, is an *issue* preclusion doctrine.

*Hill v. Doe,* No. M2007–01139–COA–R3–CV, 2008 WL 2600699, at *2 (Tenn.Ct.App. June 30, 2008)(emphasis in original); *accord Allen,* 449 U.S. at 94, 101 S.Ct. 411

("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.")(internal citations omitted).

■■■ The doctrine of res judicata, or claim preclusion, "bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit." *Lien v. Couch,* 993 S.W.2d 53, 56 (Tenn.Ct.App. 1998); *accord Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). "The principle of claim preclusion prevents parties from splitting their cause of action and requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together." *Lien,* 993 S.W.2d at 56. In Tennessee,

> [p]arties asserting a res judicata defense must demonstrate that (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action.

*Id.*

■■■ The decision of the Shelby County General Sessions Court on August 3, 2011 giving Indymac Venture possession of the property is entitled to res judicata effect.

First, the General Sessions Court is a court of competent jurisdiction. Under Tennessee law, "[t]he court of general sessions is vested with all of the jurisdiction and shall exercise the authority formerly conferred by law upon justices of the peace in civil and criminal cases, suits and actions." Tenn.Code Ann. § 16–15–501(a).

Second, the decision of the General Sessions Court was a final decision on the merits. "A judgment is final in Tennessee when it decides and disposes of the whole merits of the case leaving nothing for further judgment of the court." *Creech v. Addington*, 281 S.W.3d 363, 377 (Tenn.2009) (internal quotation marks, emphasis & citation omitted). "As a general rule, a trial court's judgment becomes final thirty days after its entry unless a party files a timely notice of appeal or specified post-trial motion." *Id.* The judgment order issued by the General Sessions Court on August 3, 2011, states that Indymac Venture must be restored possession of the property. Because Coleman did not appeal this decision, it became final thirty days after entry. Further, the August 3, 2011 order is an adjudication on the merits. The court entered judgment for Indymac Venture, finding that Coleman had forcibly entered and detained the property. Accordingly, the court ordered that the property be restored to Indymac Venture.

The third requirement is also satisfied. The plaintiff and the defendant in this action, were both parties to the action in the General Sessions Court.

As to the final requirement, Tennessee has adopted the "transactional standard" for determining whether a prior judgment and a pending suit are the same cause of action for purposes of applying res judicata. *Creech*, 281 S.W.3d at 380–81 (Tenn.2009). Under that standard, "[t]wo suits . . . shall be deemed the same 'cause of action' for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." *Id.* at 381. In this case, both the General Sessions suit and the present claim arise out of the same transaction, i.e., Coleman's continued possession of the property post-foreclosure. In the present claim, Coleman alleges that "[t]he entry of a principal, agent or employee of INDYMAC VENTURE onto and into the house at the property on or about June 15th, 2011 and at any other time prior to his lawful possession of the property constitutes an unlawful entry." (Compl., D.E. 1 ¶ 49.) However, the General Sessions Court found that Coleman and Mrs. Coleman did not have lawful possession of the property post foreclosure, which necessarily implies that the foreclosure proceedings were valid. Therefore, the General Sessions Court restored possession to Indymac Venture. Because the General Sessions Court did not deem the foreclosure proceedings to be defective, Coleman's present claim of unlawful entry is extinguished.

It appears that Coleman, discontented with the judgment of the first suit, is merely using the present suit to relitigate what has already been determined. Accordingly, this court recommends dismissal of Coleman's claim for unlawful entry as barred by the doctrine of res judicata.[9]

---

9. The weight of authority supports dismissal for failure to state a claim when a case is barred by the doctrine of res judicata. *See Thompson v. U.S., Small Bus. Admin.*, 8 Fed. Appx. 547, 549 (6th Cir.2001) (affirming failure-to-state-a-claim dismissal that was based on res judicata); *Johnson v. Johnson*, 940 F.2d 660 (6th Cir.1991) (unpublished table decision)(same); *Link v. Sumner Cnty. Jail*, 3:10–CV–0236, 2010 WL 1138029, at *2 (M.D.Tenn. Mar. 19, 2010) ("Because the plaintiff's claims are barred by the doctrine of

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) as to the defendant.

Respectfully submitted this 12th day of June, 2013.

*res judicata,* the Court finds that the plaintiff's complaint fails to state a claim upon which relief can be granted.").

Also, the issue of res judicata need not be raised in a motion in order for the court to address it, and it can be cause for dismissal based on failure to state a claim pursuant to initial screening under 28 U.S.C. § 1915(e). *See Murray v. Reed,* 69 Fed.Appx. 246, 247 (6th Cir.2003) (affirming district court's dismissal of complaint upon initial screening based on frivolousness and failure to state a claim under the principle of res judicata); *Skudnov v. Hous. Auth. of Bowling Green,* 1:07CV–149–R, 2007 WL 2915179, at *3 (W.D.Ky. Oct. 5, 2007) ("In the present action, Plaintiff is simply trying to re-litigate claims that he lost as part of his 2005 action. As such, this action is barred by the doctrine of res judicata, and therefore, must be dismissed as legally frivolous and for failure to state a claim upon which relief may be granted."); *cf. Holloway Const. Co. v. U.S. Dep't of Labor,* 891 F.2d 1211, 1212 (6th Cir.1989) (Stating that a district court is "empowered to raise res judicata *sua sponte*" and "may invoke the doctrine of res judicata in the interests of, inter alia, the promotion of judicial economy")