David JENKINS, Gloria Jenkins, Donald Bolton, Denise Bolton, Bobby Blount, and Susan Blount, individuals, Plaintiffs,

v.

MEDTRONIC, INC., a Minnesota Corporation, and Medtronic Sofamor Danek USA, Inc., a Tennessee Corporation, Defendants.

Case No. 2:13–cv–02004–JTF–cgc.

United States District Court,
W.D. Tennessee,
Western Division.

Nov. 21, 2013.

Joseph Harland Webster, Daniel Marten Czamanske, Jr., Chapman Lewis & Swan, Clarksdale, MS, David P. Matthews, Matthews & Associates, Houston, TX, Eugene A. Laurenzi, Godwin Morris Laurenzi & Bloomfield, P.C., Memphis, TN, Tim K. Goss, John Harole, Freese & Goss, PLLC, Dallas, TX, Richard Arthur Freese, Nathan C. Vanderveer, Freese & Goss, PLLC, Birmingham, AL, for Plaintiffs.

Andrew E. Tauber, Mayer Brown LLP, Washington, DC, Leo Maurice Bearman, Jr., Robert F. Tom, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, for Defendants.

### ORDER DENYING MOTION TO REMAND

JOHN T. FOWLKES, JR., District Judge.

Before the Court comes Plaintiffs' David Jenkins, Gloria Jenkins, Donald Bolton, Denise Bolton, Bobby Blount, and Susan Blount Motion to Remand, filed on March 7, 2013. (D.E. # 27). Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. filed their Response in Opposition to Plaintiffs' Motion on March 25, 2013. (D.E. # 33). On April 3, 2013, Plaintiffs filed their Reply to Defendants' Response. (D.E. # 36). Defendants filed a Motion for Leave to file a Surreply in Opposition to Plaintiffs' Motion (D.E. # 37), on April 8, 2013, but this Court denied Defendants' Motion on April 9, 2013 (D.E. # 38). A hearing on the Mo-

tion to Remand was held before this Court on July 10, 2013. (D.E. # 40). After reviewing the Motion, Responses, and Oral Arguments by the parties, the Court DENIES Plaintiffs' Motion to Remand.

## I. BACKGROUND

On November 19, 2012, Plaintiffs David Jenkins, Gloria Jenkins, Donald Bolton, Denise Bolton, Bobby Blount, and Susan Blount filed their Complaint against Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, Shelby County. The causes of action are based upon Plaintiffs' allegations that Defendants improperly and illegally promoted and sold a bioengineered bone graft device, the Infuse® Bone Graft/LT–Cage Lumbar Fusion Device ("Infuse®"), for unapproved and unreasonably dangerous surgical applications. Specifically, Plaintiffs contend that, because the use of the Infuse® was allegedly used in a manner inconsistent with the Food and Drug Administration ("FDA") approval of the device, Defendants should be found liable for, *inter alia,* negligent use and promotion of the Infuse® through an off-label manner.

Plaintiffs alleges twelve state law causes of action: (1) negligence or gross negligence; (2) negligence per se; (3) negligent misrepresentation; (4) strict product liability for manufacturing defect; (5) strict liability for design defect; (6) strict product liability for failure to warn, inadequate warning, or inadequate instructions; (7) strict product liability for breach of express warranty; (8) breach of implied warranty; (9) fraudulent misrepresentation and fraud in the inducement; (10) constructive fraud; (11) violations of the Tennessee Consumer Protection Act (TCPA); and (12) loss of consortium. Plaintiffs requested compensatory damages and general damages, economic and non-economic in the excess of $2,000,000; punitive and exemplary damages; treble damages; attorneys' fees; award of prejudgment interest, costs and disbursements; and any other equitable relief identified by the court.

Defendants removed the case to the Western District of Tennessee, Western Division, on January 3, 2013. (D.E. # 1). Subsequently, on March 3, 2013, Plaintiffs' filed a Motion to Remand the case. Plaintiffs argue this case was improperly removed from state court because no federal cause of action exists. Specifically, Plaintiffs contend that its allegations are based upon state law claims, which do not raise a substantial question of federal law and, consequently, do not give rise to federal question jurisdiction. Plaintiffs aver that their claims should be remanded for the foregoing reasons: (1) Their state law based claims do not substantially involve federal law; (2) Enlarging federal question jurisdiction, in the way in which Defendants request, would upset the state-federal balance; and (3) A federal defense, including a preemption defense, does not suffice as a basis for finding federal jurisdiction.

Conversely, Defendants assert that, because the Infuse® is classified as a Class III, FDA premarket approved device under the Medical Device Amendments of 1976 ("MDA") to the Federal Food, Drug, and Cosmetic Act of 1938 ("FDCA"), 21 U.S.C. § 360k(a), the case properly belongs under federal jurisdiction. Specifically, Defendants contend that this case was properly removed to this district, based upon Sixth Circuit precedent and the substantial-federal question doctrine. Specifically, Defendants contend: (1) Plaintiffs' claims necessarily turn on disputed issues of federal law; (2) Federal interest in regulating Class III medical devices is substantial; and (3) Federal ju-

risdiction over claims involving premarket approved medical devices does not upset the state-federal balance.

## II. ANALYSIS

### A. Jurisdictional Framework Governing Removal

On a motion to remand, a defendant bears the burden of showing that a federal court has original jurisdiction through either diversity of citizenship, *see* 28 U.S.C. § 1332, or federal question jurisdiction, *see* 28 U.S.C. §§ 1331 and 1441. *See Kramer v. Regions Bank*, No. 09-2408, 2010 WL 797792, at *2 (W.D.Tenn. Mar. 2, 2010). In this case, the Court must examine whether federal question jurisdiction exists. Thus, the Court must look to 28 U.S.C. §§ 1331 and 1441. Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." The threshold inquiry in determining whether a claim " 'arises under' federal law must . . . be determined by reference to the 'well-pleaded complaint.' " *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)); *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 561 (6th Cir.2007) (quoting *Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. 2841) ("For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law.").

It is well settled that neither a federal defense nor the mere presence of a federal issue will establish the necessary jurisdictional elements to remove a state cause of action to federal court. *See Merrell Dow*, 478 U.S. at 813, 106 S.Ct. 3229. Although the majority of cases removed to federal court set forth causes of action that plainly raise federal issues, there are three exceptions to the "well-pleaded complaint" that confer federal question jurisdiction, when a federal cause of action is not evident on the face of the complaint: (1) artful-pleading doctrine, (2) complete preemption doctrine, and (3) substantial-federal-question doctrine. *Mikulski*, 501 F.3d at 560. Under the artful pleading doctrine, federal question jurisdiction exists when a plaintiff shrouds its complaint with state law claims in order to avoid federal jurisdiction when its claim are truly federal cause of actions. *See Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989); *See also Mikulski*, 501 F.3d at 561. However, rarely will the federal court " 'seek to determine whether the real nature of the claims is federal, regardless of plaintiff's characterization, [instead] most [removal courts] correctly confine this practice to areas of the law pre-empted by federal substantive law.' " *Mikulski*, 501 F.3d at 561 (internal citation omitted).

Under the complete-preemption doctrine, federal question jurisdiction exists when Congress has "intend[ed] the preemptive force of a federal statute to be so extraordinary that 'any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.' " *Id.* at 563 (internal citation omit-

ted). The Supreme Court has only applied the complete-preemption doctrine in three areas: (1) Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; (2) the Employee Retirement Income Security Act of 1975, 29 U.S.C. §§ 1001–1461; and (3) the National Bank Act, 12 U.S.C. § 39.

■ Lastly, under the substantial-federal-question doctrine, federal question jurisdiction exists when "the state-law claim necessarily state[s] a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Or more plainly stated, a state law cause of action may arise under federal law where "the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Mikulski,* 501 F.3d at 565; *See also Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229 (quoting *Franchise Tax Bd.,* 463 U.S. at 9, 103 S.Ct. 2841).

In the present case, Plaintiffs have raised twelve state law causes of action regarding Defendants' improper and illegal use, sale, and promotion of the Infuse® for unapproved and unreasonably dangerous surgical applications. Defendants aver that Plaintiffs' claims fall under the substantial-federal-question doctrine because Plaintiffs cannot prevail without proving that the Infuse® did not comply with federal requirements, imposed by the FDA and its premarket approval process. Because Plaintiffs' Complaint does not appear to be a blatant avoidance of federal jurisdiction or trigger an analysis under the three statutory areas wholly preempted by federal law, the Court finds it proper to examine this case under the substantial-federal-question doctrine.

**B. Plaintiffs' Claims Fall Under the Substantial–Federal–Question Doctrine**

■ The Court will confer federal question jurisdiction under the substantial-federal-question doctrine when: (1) the state law has necessarily raised a disputed federal issue; (2) the federal interest in the issue is substantial; and (3) the exercise of jurisdiction does not threaten the state-federal law jurisdictional balance. *See Mikulski,* 501 F.3d at 568. Because the Infuse® is Class III, premarket approved device under the MDA, the Court finds that Plaintiffs' claims against Defendants' alleged misuse and improper promotion of the Infuse® appropriately elicits an analysis under the substantial-federal-question doctrine. Plaintiffs' claims undoubtedly require this Court to examine federal law, and, even more specifically, examine federal requirements imposed by the FDA through the premarket approval process. Therefore, the Court finds Plaintiffs' claims would be more suitably decided by federal question jurisdiction under the substantial-federal-question doctrine.

**1. Plaintiffs' State Law Claims Necessarily Raise a Disputed Federal Issue**

First, the Court must examine whether the state law claims have raised a disputed federal issue in this case. Since the Infuse® is a Class III, premarket approved device under the MDA, the Court looks specifically to the MDA to examine this first element of the substantial-federal-question doctrine. The MDA expressly preempts any state requirement on devices intended for human issue that is "different from, or in addition to, any requirement applicable under [the MDA]" or that "relates to the safety or effectiveness of the

device ..." 21 U.S.C. § 360k(a). The only way a state requirement can be exempted from this express preemption is if "the [state] requirement is more stringent than a requirement under [the MDA] which would be applicable to the device if an exemption were not in effect;" or if the state requirement is "required by compelling local conditions;" and if "compliance with the requirement would not cause the device to be in violation of any applicable requirement [under the MDA]." 21 U.S.C. § 360k(b).

The MDA classifies medical devices in three distinct categories: (1) Class I devices, which are subject to the lowest oversight, *See* 21 U.S.C. § 360c(a)(1)(A); (2) Class II devices, which are subject to special controls, *See* 21 U.S.C. § 360c(a)(1)(B); and (3) Class III devices, which are subject to premarket approval and the highest federal oversight, *See* 21 U.S.C. § 360c(a)(1)(C). Class III devices are classified as such because it

> (i) (I) cannot be classified as a class I device [or class II device] because insufficient information exists to determine that the application of general controls are sufficient to provide reasonable assurances of the safety and effectiveness of the device ..., and
>
> \* \* \*
>
> (ii) (I) is purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health, or (II) presents a potential unreasonable risk of illness or injury ...

21 U.S.C. § 360c(a)(1)(C).

■ The premarket approval process for Class III devices requires multivolume applications to be submitted by the manufacturer and approximately 1,200 hours of review for each application by the FDA. *See Riegel v. Medtronic, Inc.,* 552 U.S. 312, 318, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). A device will be granted premarket approval only if "there is a reasonable assurance of safety and effectiveness," and if "the proposed labeling is neither false nor misleading." 21 U.S.C. § 360e(a)(1)(A). The FDA determines the safety and effectiveness of the device,

> (A) with respect to the persons for whose use the device is represented or intended,
>
> (B) with respect to the conditions of the use prescribed, recommended, or suggested in the labeling of the device, and
>
> (C) weighing any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.

21 U.S.C. § 360c(a)(2). As the Supreme Court has previously recognized, the FDA may "approve devices that present great risks if they nonetheless offer great benefits in light of available alternatives." *Riegel,* 552 U.S. at 318, 128 S.Ct. 999.

Once a device receives premarket approval, the FDA requires the device "to be made with almost no deviations from the specifications in its approval application." *Id.* at 323, 128 S.Ct. 999. The only manner for which a device can be modified is for the manufacturer to submit a supplemental application that details the affects the modifications would have on the safety or effectiveness of the device. *See* 21 U.S.C. § 360e(d)(6)(A)(i). After premarket approval, manufacturers are required to submit detail reports for the FDA's continuous oversight of the device. *See* 21 U.S.C. § 360i.

■ In the present case, Plaintiffs argue that Defendants violated, *inter alia,*

state law claims of negligence when Defendants allegedly improperly and illegally sold and used the Infuse®. Defendants argue that Plaintiffs' claims necessarily turn on disputed issues of federal law because Plaintiffs cannot prevail on their claims, unless they prove that Defendants violated federal requirements imposed by the FDA on the Infuse®. However, Plaintiffs contend that Defendants' argument is grounded in an inapplicable federal preemption defense. Specifically, Plaintiffs aver that they were "implanted with a debased version of the product that has *never* been scrutinized by the FDA, and thus was neither approved nor subject to any specific requirements ... that would arguably result in a preemptive effect on Plaintiffs' claims." (D.E. # 36, at 2)(original emphasis). Plaintiffs contend that because the device was allegedly used in an off-label manner, the Infuse® was taken out of the regulatory scope and requirements of the FDA.

The Court does not find Plaintiffs' argument persuasive. In Plaintiffs' First Amended Complaint, Plaintiffs state that "[t]his case is about the Defendants' improper and illegal promotion and sale of a bio-engineered bone graft device, known as the InFUSE® Bone Graft/LT–Cage Lumbar Fusion Device ... for unapproved and unreasonably dangerous surgical applications, rendering the product defective." (D.E. # 1–3, at ¶ 1). Plaintiffs acknowledged that the Infuse® is a Class III device and that the Infuse® received FDA approval in 2002. Plaintiffs have set the landscape and scope of the issues that would be addressed in this case, and Defendants have properly asserted an applicable preemption defense to Plaintiffs' claims. This Court believes Plaintiffs' claims necessarily raise disputed federal issues. Defendants have carried their burden of the first element of the substantial-federal-question doctrine.

## 2. A Substantial Federal Interest Exists in this Case

██ Next, the Court turns to the second element of the substantial-federal-question doctrine: the substantiality of the federal interest at issue. The courts have identified four factors that must be considered in determining the substantiality of the federal interest in an issue:

(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute;

(2) whether the federal question is important (i.e., not trivial);

(3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome);

(4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated.)

*Mikulski,* 501 F.3d at 570. These factors are to be examined collectively and in light of the issues presented in each case— meaning that "no single factor is dispositive." *Id.*

██ This case does not involve a federal agency or the agency's disputed compliance with a federal statute. However, because of the nature of the medical device in this case, the FDA is invoked, but the FDA is not the focus of the issue. Instead, the focus of this case and, in turn, the substantial federal interest in this case is whether the express preemption in the MDA bars Plaintiffs' state law claims that challenge Defendants' use, sale, and promotion of a Class III device. The courts have previously stated that "general federal requirements could never pre-empt, or general state duties [could] never be pre-empted." *Riegel,* 552 U.S. at 322, 128

S.Ct. 999. However, because the Infuse® is a Class III, premarket approved device, the Court must address an important federal question that deals specifically, and not generally, with federal regulations and requirements regarding a highly regulated medical device. As the Supreme Court stated in *Riegel*, "[u]nlike general labeling duties, premarket approval is specific to individual devices. And it is in no sense an exemption from federal safety review— it *is* federal safety review." 552 U.S. at 322–323, 128 S.Ct. 999 (original emphasis).

Plaintiffs argue that the mere presence of a federal regulation is insufficient to establish a substantial federal interest. Additionally, Plaintiffs argue that Defendants "confuse the federal government's interest in regulating medical devices (which may well be substantial) with its interest in regulating tort claims brought under the laws of individual states (which is not substantial)." (D.E. # 27–1, at 5). Conversely, Defendants argue that Plaintiffs have overlooked that the federal government's regulation of medical devices through tort claims is just as substantial as regulation through other means.

This Court finds that the federal interest at issue is substantial in this case. The federal interest in this issue satisfies three of the four factors identified by the courts: it (1) presents an important and non-trivial federal question that will (2) dispose of the case when decided upon and will (3) control numerous other cases. Moreover, the thirty-three other cases pending before this Court involving the Defendants of this case and the medical device Infuse® alone prove that the Court's ruling of the federal question in this case will not have an inconsequential effect. Consequently, the Court finds the second element of the substantial-federal-question doctrine has been satisfied, because a substantial federal interest exists.

### 3. The State–Federal Jurisdictional Balance is Not Damaged by the Conferral of Federal Question Jurisdiction over Plaintiffs' Claims

Third, the Court must examine whether a conferral of federal question jurisdiction over Plaintiffs' claims would upset the state-federal jurisdictional balance. As the Supreme Court has stated,

[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.

*Grable*, 545 U.S. at 313–314, 125 S.Ct. 2363. As the courts have reiterated time and again, there is no bright-line rule in determining the presence of a federal issue because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow*, 478 U.S. at 810, 106 S.Ct. 3229. Therefore, it is imperative for the courts to carefully analyze these factors so that the state-federal jurisdictional balance is not threatened.

Defendants contend that the nature of the issues presently before the Court are the type that can only be determined by federal law. However, Plaintiffs argue that enlarging federal question jurisdiction in the manner Defendants request would upset the state-federal balance among the courts. Plaintiffs properly reiterate the court's need to be consistent with congressional intent and cognizant of not inundating federal courts with cases that should remain in state courts. Although Plaintiffs' concerns are valid, they are unsubstantiated in this particular case.

Here, the issue at hand invokes the MDA because of the categorization of the Infuse® as a Class III device that has undergone an arduous premarket approval process. As it has been explained above, Congress expressly prescribed the regulation of Class III devices to federal law through the MDA. The MDA unambiguously states that any state requirement that seeks to impose a requirement "different from, or in addition to, any [federal] requirement applicable ... to the device" will be preempted. 21 U.S.C. § 360k(a)(1). The effect of conferring federal question jurisdiction to an issue so closely bound by federal law would have a "microscope effect" on the state-federal jurisdictional balance. *Grable,* 545 U.S. at 315, 125 S.Ct. 2363.

When Plaintiffs' claims are stripped down to their essential elements, the bases of Plaintiffs' Complaint are a challenge to the safety and effectiveness of the Infuse®. The regulations and requirements of the safety and effectiveness of a Class III, premarket approved device belong under the scope of federal question jurisdiction. Therefore, the Court believes that the state-federal jurisdictional balance remains untouched by the conferral of federal jurisdiction over Plaintiffs' claims. Consequently, Defendants have established the third element of the substantial-federal-question doctrine.

### III. CONCLUSION

For the foregoing reasons, this Court finds that Defendants have met their burden for removal. Consequently, Plaintiffs' Motion to Remand is DENIED. This Court has jurisdiction to rule on all claims brought before it regarding this case.