Rose **ARRINGTON, Joshua Lucas, Stephen and Anita Mayek, Kerry Hardy, Debra Izzo–Blount, Hector Santos,** Plaintiffs,

v.

**MEDTRONIC, INC.,** and **Medtronic Sofamor Danek USA, Inc.,** Defendants.

Case Nos. 2:14–cv–02473–JTF–cgc, 2:14–cv–02503–JTF–cgc, 2:14–cv–02523–JTF–cgc, 2:14–cv–02535–JTF–cgc, 2:14–cv–02536–JTF–cgc, 2:14–cv–02537–JTF–cgc.

United States District Court, W.D. Tennessee, Western Division.

Signed Sept. 2, 2014.

Kevin J. Renfro, Becker Law Office, Leslie M. Cronen, Bubalo Goode Sales & Bliss, PLC, Louisville, KY, for Plaintiffs.

Andrew E. Tauber, Mayer Brown LLP, Washington, DC, Daniel L. Ring, Mayer Brown LLP, Chicago, IL, Leo Maurice Bearman, Jr., Sean P. Fahey, Robert F.

Tom, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, for Defendants.

Jimmy Moore, Memphis, TN, pro se.

## ORDER DENYING MOTION TO REMAND

JOHN T. FOWLKES, JR., District Judge.

Before the Court comes Plaintiffs' Rose Arrington, Joshua Lucas, Stephen and Anita Mayek, Kerry Hardy, Debra Izzo-Blount, and Hector Santos Joint Motion to Remand, filed on July 17, 2014. (Pls.' Mot. Remand, *Arrington v. Medtronic, Inc.*, 2:14-cv-02473-JTF-cgc, ECF No. 9-1).[1] On August 2, 2014, Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. filed their Response in Opposition to Plaintiff's Motion. (Defs.' Opp'n to Mot. Remand, ECF No. 17). Plaintiffs filed their Reply Brief in Support of their Motion to Remand on August 18, 2014. (Pls.' Reply to Mot. Remand, ECF No. 26). After reviewing the Motion and the entire record, the Court DENIES Plaintiffs' Motion to Remand.

## I. BACKGROUND

On June 19, 2014, Plaintiff Rose Arrington filed her Complaint against Defendants Medtronic, Inc. ("Medtronic") and Medtronic Sofamor Danek USA, Inc. ("MSD") in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, Shelby County ("Circuit Court").[2] The

---

1. Because Plaintiffs filed a Joint Motion to Remand, this Court will look only to the filings, dates, and briefings in the first filed case *Arrington v. Medtronic, Inc.*, 2:14-cv-02473-JTF-cgc for the purposes of this Order. The Court notes that some of the filing dates are different for each case. However, the differences in the filing dates have no bearing on the substantive issues of these cases.

2. A Master Complaint, encompassing all current and future *Medtronic* cases, was filed on

April 28, 2014. (Master Compl., *Jenkins v. Medtronic*, 2:13-cv-02004-JTF-cgc, ECF No. 74). On May 1, 2014, Plaintiffs filed an Amended Complaint, which all Plaintiffs in the related *Medtronic* cases adopted and incorporated as if filed in their own individual actions. (Am. Master Compl., *Jenkins v. Medtronic*, 2:13-cv-02004-JTF-cgc, ECF No. 75). Therefore, for the purposes of this Motion, this Court will look to the Amended Master Complaint for guidance on the various causes of actions and facts alleged.

causes of action are based upon Plaintiffs' allegations that Defendants improperly and illegally promoted and sold a bio-engineered bone graft device, the Infuse® Bone Graft/LT–Cage™ Lumbar Tapered Fusion Device ("Infuse®"), for unapproved and unreasonably dangerous surgical applications, which caused serious and permanent injuries to Plaintiffs. Specifically, Plaintiffs contend that, because the Infuse® was allegedly used in a manner inconsistent with the Food and Drug Administration's ("FDA") approval of the device, Defendants should be found liable for, *inter alia*, fraudulent use and promotion of the Infuse® through an off-label manner.

Plaintiffs allege eight causes of action: (1) fraudulent concealment, misrepresentation, and fraud; (2) failure to warn; (3) strict products liability—design defect; (4) negligent misrepresentation; (5) product liability—negligence; (6) breach of express warranty; (7) breach of implied warranty; and (8) various punitive damages. Plaintiffs request general damages "in an amount exceeding the jurisdictional limits of [Circuit Court] and the diversity jurisdictional limits of the U.S. District Court to be proven at trial," various past and future damages, and consequential damages. (Am. Master Compl., 187, *Jenkins v. Medtronic*, 2:13–cv–02004–JTF–cgc, ECF No. 75–1).

Defendant Medtronic, Inc. removed the case to the Western District of Tennessee, Western Division, on May 14, 2014. (Def.'s Not. of Removal, ECF No. 1). Subsequently, on July 17, 2014, Plaintiffs filed their Joint Motion to Remand their cases. Plaintiffs argue their cases were improperly removed from state court based on both diversity and federal question jurisdiction. Specifically, Plaintiffs aver that, although they are aware this Court ruled in *Jenkins v. Medtronic, Inc.*, 984 F.Supp.3d 873 (W.D.Tenn.2013), that the plaintiffs in that case were not entitled

to remand, their claims against Defendants should be remanded because: (1) they allege only state law remedies that parallel federal requirements; (2) Defendants' preemption defense is not a basis for removal; (3) federal questions are not substantial because FDA regulations are without substantial dispute as to their interpretation; and (4) basing jurisdiction on a defense will upset the balance of federal and state judicial responsibilities.

In their Response in Opposition to Plaintiff's Motion to Remand, Defendants assert that, because the Infuse® is classified as a Class III, FDA, premarket approved ("PMA") device under the Medical Device Amendments of 1976 ("MDA") to the Federal Food, Drug, and Cosmetic Act of 1938 ("FDCA"), 21 U.S.C. § 360k(a), these cases properly belong under federal jurisdiction. Additionally, Defendants argue that the removal of these cases from state court to federal district court was proper, because: (1) As this Court found in *Jenkins*, federal question jurisdiction exists, and (2) Removal based on diversity jurisdiction was proper. More Specifically, as to the existence of federal question jurisdiction, Defendants argue that: (1) The substantial federal question doctrine is an exception to the well-pleaded complaint rule; (2) Because 21 U.S.C. § 360k(a) requires a plaintiff to prove a federal violation, these cases necessarily raises questions of federal law; (3) The federal interest in regulating Class III medical devices is substantial; and (4) Federal jurisdiction over claims involving PMA medical devices does not upset the balance of federal and state judicial responsibility.

## II. ANALYSIS

On a motion to remand, a defendant bears the burden of showing that federal court has original jurisdiction

through either diversity of citizenship, *see* 28 U.S.C. §§ 1332(a) and 1441(b), or federal question jurisdiction, *see* 28 U.S.C. §§ 1331 and 1441(a). *See Warthman v. Genoa Township Bd. of Trustees*, 549 F.3d 1055, 1061 (6th Cir.2008) and *Kramer v. Regions Bank*, No. 09–2408, 2010 WL 797792, at *2 (W.D.Tenn. Mar. 2, 2010). However, it is a well-settled premise in the Sixth Circuit that "because they implicate federalism concerns, removal statutes are to be narrowly construed." *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754, 757 (6th Cir.2000). When there is uncertainty as to whether remand is appropriate or not, "all doubts should be resolved in favor of remand." *Ethington v. General Electric Co.*, 575 F.Supp.2d 855, 860 (N.D.Ohio 2008). In this case, both diversity of citizenship and federal question jurisdiction issues are raised. Thus, this Court must examine whether these jurisdictional issues exist in this case.

## A. Diversity of Citizenship Does not Exist

Both 28 U.S.C. §§ 1332(a) and 1441(b)(2) govern the court's analysis of removal based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between citizens of different States"); *see also* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"). When a defendant's right to removal is questioned under 28 U.S.C. § 1441(b)(2), the court must look to the forum defendant rule to determine whether diversity of citizenship exists.

■ Under the forum defendant rule, a defendant is prohibited "from removing a case to federal district court when the concerns that underpin diversity jurisdiction (i.e. prejudice to out-of-state defendants) are not present because the plaintiff chose to file suit in defendant's own home state courts." *Ethington*, 575 F.Supp.2d at 858. In other words, a defendant may remove a case to federal court only when there is complete diversity of citizenship "between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005).

The Supreme Court has expressly stated that, "[i]t is not incumbent on the named defendants to negate the existence of a potential defendant whose presence in the action would destroy diversity." *Id.* Defendants correctly identify the leading Sixth Circuit case, *McCall v. Scott*, 239 F.3d 808, 813 n. 2 (6th Cir.2001), which states, in dicta, that "[w]here there is complete diversity of citizenship ... the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)." There is certainly a split within this Circuit about the application of *McCall*. However, there have been several district courts that have distinguished the Sixth Circuit's dicta in *McCall*. For example, in *Ethington*, the Court states that,

> Congress intended the "joined and served" part of the forum defendant rule to prevent gamesmanship by plaintiffs, who might name an in-state defendant against whom he or she does not have a valid claim in a complaint filed in state court to defeat otherwise permissible removal by the non-forum defendant(s).... The tactics employed by defendants [i.e. the removal of a case from state court to federal court by a forum defendant, before service on the forum

defendant and/or a non-forum defendant] turn Congressional intent on its head by allowing defendants to employ gamesmanship, specifically by rushing to remove a newly filed state court case before the plaintiff can perfect service on anyone.[3]

575 F.Supp.2d at 861–862. *See also In re Darvocet, Darvon and Propoxyphene Products Liability Litigation*, No. 2:12-97–DCR, 2012 WL 2919219, at *3 (E.D.Ky. July 17, 2012) ("This Court ... holds that an in-state defendant cannot avoid the statutory prohibition against removal by removing the case before service"); *but see Linder v. Medtronic, Inc.*, 2013 WL 5486770, at *2 (W.D.Tenn. Sept. 30, 2013) ("First, there is nothing in the removal statute that precludes Medtronic from filing a notice of removal prior to Plaintiff effecting service of process upon it. Service of process is not a prerequisite to a defendant exercising its right of removal. Second, '[w]here there is complete diversity of citizenship ... the inclusion of an *unserved* defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)' ") (internal citation omitted).

Yet another case that sheds light upon this issue is *NFC Acquisition, LLC v. Comerica Bank*, 640 F.Supp.2d 964 (N.D.Ohio 2009), which further clarifies the ruling in *Ethington*. In *NFC Acquisition*, the defendant attempted to distinguish the facts of its case with that of the facts in *Ethington* "on the basis that a forum defendant filed for removal [in *Ethington* ], whereas [in the *NFC Acquisition* case], a non-forum defendant filed for removal." 640 F.Supp.2d at 969. However, the Court ruled that "nothing in the text of § 1441(b) ... makes the forum defendant rule dependent on which defendant filed for removal." *Id.*

■ Here, Plaintiffs argue that Defendant Medtronic purposefully attempted to evade service on Defendant MSD by improperly removing these cases before Defendant MSD was served in Circuit Court. Plaintiffs contend that "[b]ecause this Court has rejected such gamesmanship," it will not concentrate on the issue of diversity jurisdiction, since it has been previously fully briefed in similar cases. (Pls.' Mot. Remand, 6, ECF No. 9–1).

Conversely, Defendants argue that this Court has jurisdiction based on diversity jurisdiction because "notwithstanding the fact that [MSD] is a citizen of Tennessee ... at the time of removal, MSD had not been 'properly joined and served.' " (Defs.' Opp'n to Mot. Remand, 13, ECF No. 17). Defendants properly call this Court's attention to the various cases in the Sixth Circuit that accurately support their argument. Specifically, Defendants contend that this Court should follow *McCall* because it not only "represents the Sixth Circuit's considered interpretation of § 1441(b) and the majority rule in cases decided subsequent to *McCall*, but also because it is correct given the plain language of the statute and plain language should control." (Defs.' Opp'n to Mot. Remand, 16, ECF No. 17). In essence, Defendants argue that this Court should look to the *Darvocet* Court's dicta for guidance, which states that, "[s]ome district courts in this circuit have rejected [*McCall* 's] reading of the statute ... The majority, however, have adopted the literal reading of the

---

**3.** The *Ethington* Court goes on further to state that, "[g]iven that Congress intended the 'properly joined and served' language to *prevent* litigant gamesmanship, 'it would be especially absurd to interpret the same 'joined and served' requirement to actually condone a similar kind of gamesmanship from defendants' in instances such as the case at bar.' " 575 F.Supp.2d at 862 (quoting *Allen v. GlaxoSmithKline PLC*, 2008 WL 2247067, at *4 (E.D.P.A. May 30, 2008)) (original emphasis).

statutory language." 2012 WL 2919219, at *2.

Defendants oppose Plaintiffs' gamesmanship argument and instead reiterate that they are simply following the plain language of the removal statute. *See* Defs.' Opp'n to Mot. Remand, 14, ECF No. 17 ("There is nothing 'wrongful' . . . in removing the case in accordance with the plain text of § 1441(b)"). Specifically, Defendants argue that "[t]he fact that Congress did *not* revise § 1441(b)'s 'properly joined and served' provision even when deemed to be aware of cases applying it just as we argue here underscores that there is no legitimate basis to infer that Congress intended anything other than what it plainly and unambiguously said in § 1441(b)." (Defs.' Opp'n to Mot. Remand, 18, ECF No. 17) (original emphasis).

Plaintiffs' original Complaint was filed on June 19, 2014 in state court against Defendant MSD, which is a Tennessee corporation with its principal place of business in Tennessee, and Defendant Medtronic, Inc., which is a Minnesota corporation. Plaintiffs are residents of various states, such as Minnesota, Kentucky, and Tennessee.[4] Although there is complete diversity of citizenship among Plaintiffs and Defendants, Defendant MSD is a defendant of the forum state. Defendant Medtronic filed the Notice of Removal on July 11, 2014, prior to service by Plaintiffs on either Defendant. At the time of the filing of the Notice of Removal, neither Defendant Medtronic nor Defendant MSD had yet to be served by Plaintiffs. *See* Defs.' Not. Removal, ¶¶ 2–3, ECF No. 1.

The Court finds Plaintiffs' argument, as well as the numerous district court opinions on this issue persuasive. Defendants are correct that many districts in this Circuit have adopted the plain language of § 1441(b). Defendants are also correct that the Supreme Court has stated on many occasions that "'when the language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). However, this Court believes Defendants' actions are precisely the type of tactics and gamesmanship the courts have addressed and have found to be improper. Although Defendants' actions may not be "wrongful," they are dubious at best. *See Perez v. Forest Laboratories, Inc.*, 902 F.Supp.2d 1238, 1246 (E.D.Mo.2012) (finding that pre-service removal runs afoul to the legislative intent, the plain language of § 1441(b)(2), and the forum defendant rule); *but see Revere v. MERS*, No. 10–10580, 2010 WL 1541506, at *3 (E.D.Mich. Apr. 19, 2010) (finding that an unserved defendant does not destroy the court's jurisdiction under § 1441(b)(2)).

Based upon the facts of these cases and the law in the Sixth Circuit, the Court

---

4. The Court examined each Plaintiff's original individually filed Complaint and not to the Amended Master Complaint to determine residency. See e.g. *Arrington v. Medtronic, Inc.*, 2:14–cv–02473–JTF–cgc (Plaintiff is a resident of Norfolk, Norfolk City County, Virginia); *Lucas v. Medtronic, Inc.*, 2:14–cv–02523–JTF–cgc (Plaintiff is a resident of Kissimmee, Osceola County, Florida); *Mayek v. Medtronic, Inc.*, 2:14–cv–02401–JTF–cgc (Plaintiffs are residents of Germantown, Washington County, Wisconsin); *Hardy v. Medtronic, Inc.*, 2:14–cv–02535–JTF–cgc (Plaintiff is a resident of Montgomery, Alabama); *Izzo–Blount v. Medtronic, Inc.*, 2:14–cv–02536–JTF–cgc (Plaintiff is a resident of Glen Cove, Nassau County, New York); and *Santos v. Medtronic, Inc.*, 2:14–cv–02537–JTF–cgc (Plaintiff is a resident of Rio Grande, Humacao County, Puerto Rico).

believes that Defendants' removal of this case, based upon diversity of citizenship, from state court to federal court was improper. However, even without diversity of citizenship, this Court may still have jurisdiction over Plaintiffs' claims, if federal question jurisdiction exists. *See Joseph v. Baxter Int'l, Inc.*, 614 F.Supp.2d 868, 871 (N.D.Ohio 2009) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 ("Absent diversity of citizenship, federal-question jurisdiction is required")). Therefore, the Court must now turn to examine whether federal question jurisdiction exists.

## B. Federal Question Jurisdiction Exists

■ In order to analyze whether federal question jurisdiction exists, the Court looks to 28 U.S.C. §§ 1331 and 1441(a). Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." The threshold inquiry in determining whether a claim "'arises under' federal law must ... be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)); *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 561 (6th Cir.2007) (quoting *Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. 2841) ("For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the plaintiff's

complaint establishes that the case arises under federal law").

■ It is well settled law that neither an actual or anticipated federal defense nor the mere presence of a federal issue will establish the necessary jurisdictional elements to remove a state cause of action to federal court. *See Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229. ("A defense that raises a federal question is inadequate to confer federal jurisdiction"); *see also Caterpillar Inc.*, 482 U.S. at 393, 107 S.Ct. 2425 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue") (original emphasis). Although the majority of cases removed to federal court set forth causes of action that plainly raise federal issues, when a federal cause of action is not evident on the face of the complaint, there are three exceptions to the "well-pleaded complaint" that confer federal question jurisdiction: (1) the artful-pleading doctrine, (2) the complete pre-emption doctrine, and (3) the substantial-federal-question doctrine. *Mikulski*, 501 F.3d at 560.

■ Under the artful pleading doctrine, federal question jurisdiction exists when a plaintiff shrouds its complaint with state law claims in order to avoid federal jurisdiction when its claim are truly federal cause of actions. *See Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989). However, rarely will the federal court "'seek to determine whether the real nature of the claims is federal, regardless of plaintiff's characterization, [instead] most [removal courts] correctly confine this practice to areas of the law pre-empted by federal substantive law.'" *Mikul-*

*ski,* 501 F.3d at 561 (internal citation omitted).

Under the complete-preemption doctrine, federal question jurisdiction exists when Congress has "intend[ed] the preemptive force of a federal statute to be so extraordinary that 'any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Id.* at 563 (internal citation omitted). The Supreme Court has only applied the complete-preemption doctrine in three areas: (1) Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; (2) the Employee Retirement Income Security Act of 1975, 29 U.S.C. §§ 1001–1461; and (3) the National Bank Act, 12 U.S.C. § 39. Thus, the complete-preemption doctrine is only used in very limited circumstances.

Lastly, under the substantial-federal-question doctrine, federal question jurisdiction exists when "the state-law claim necessarily state[s] a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005); *see also Landers v. Morgan Asset Mgmt. Inc.,* No. 08–2260, 2009 WL 962689, *5 (W.D.Tenn. Mar. 31, 2009) ("Where a well-pleaded complaint does not seek relief under federal law, a court may find removal proper if the plaintiff's complaint raises a 'substantial' federal question"). Or, more plainly stated, a state law cause of action may arise under federal law where " 'the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229 (quoting *Franchise Tax Bd.,* 463 U.S. at 9, 103 S.Ct. 2841). *See also, e.g., Mikul-*

*ski,* 501 F.3d at 565 ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law").

In the present cases, Plaintiffs have raised eight causes of action, regarding Defendants' alleged improper and illegal use, sale, and promotion of the Infuse® for unapproved and unreasonably dangerous surgical applications. Defendants aver that Plaintiffs' claims fall under the substantial-federal-question doctrine because Plaintiffs cannot prevail without proving that the Infuse® did not comply with federal requirements, imposed by the FDA and its premarket approval process. Because Plaintiffs' Complaint does not appear to be a blatant avoidance of federal jurisdiction or trigger an analysis under the three statutory areas wholly preempted by federal law, the Court finds it proper to examine these cases under the substantial-federal-question doctrine.

### 1. Plaintiffs' Claims Fall Under the Substantial–Federal–Question Doctrine

The court will confer federal question jurisdiction under the substantial-federal-question doctrine when: (1) the state law has necessarily raised a disputed federal issue; (2) the federal interest in the issue is substantial; and (3) the exercise of jurisdiction does not threaten the state-federal law jurisdictional balance. *See Gunn v. Minton,* —— U.S. ——, 133 S.Ct. 1059, 1065, 185 L.Ed.2d 72 (2013) ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress"); *accord Mi-*

*kulski,* 501 F.3d at 568. Because the Infuse® is a Class III, PMA device under the MDA, the Court finds that Plaintiffs' claims against Defendants' alleged misuse and improper promotion of the Infuse® appropriately elicits an analysis under the substantial-federal-question · doctrine. Plaintiffs' claims undoubtedly require this Court to examine federal law, and, even more specifically, examine federal requirements imposed by the FDA through the premarket approval process.

In these cases, Plaintiffs argue that "[t]he substantiality of the federal questions in this case is simply irrelevant because all such questions emerge solely within the defense of preemption." (Pls.' Mot. Remand, 9, ECF No. 9–1). Additionally, Plaintiffs contend that the Eastern District of Kentucky's decision in *Dillon v. Medtronic, Inc.,* 992 F.Supp.2d 751 (E.D.Ky.2014), rightly questions the validity of the substantial-federal-question doctrine as a true exception to the well-pleaded complaint rule. *See Dillon,* 992 F.Supp.2d at 757 ("The Sixth Circuit has referred to the substantial-federal-question doctrine as an 'exception' to the well-pleaded complaint rule ..., this choice of terminology does not change the reasoning or the outcome of this case because the substantial-federal-question doctrine is not a true exception to the well-pleaded-complaint rule").

Additionally, Plaintiffs assert this Court's decision in *Jenkins* was improperly decided because the Court was not thoroughly briefed on the Supreme Court cases *Caterpillar v. Williams* and *Gunn v. Minton.* In light of these Supreme Court decisions, Plaintiffs argue that this Court need not even address these cases under the analysis of the substantial-federal-question doctrine since Defendants' argu-

ment for removal .is based entirely on a defense. While this Court did not previously mention these cases in length in *Jenkins,* the Court's analysis in evaluating Plaintiffs' claims under the substantial-federal-question doctrine remains unchanged.[5] The *Williams* and *Gunn* decisions serve as a road map for this Court, however, the *Grable* and *Mikulski* decisions remain binding precedent for this Court. Therefore, based on the case law in this Circuit, this Court finds that Plaintiffs' claims would be aptly analyzed under federal question jurisdiction by the substantial-federal-question doctrine.

### a. Plaintiffs' State Law Claims Necessarily Raise a Disputed Federal Issue

■ First, the Court must examine whether the state law claims have raised a disputed federal issue in this case. Since the Infuse® is a Class III, PMA device under the MDA, the Court looks specifically to the MDA to examine this first element of the substantial-federal-question doctrine. The MDA expressly preempts any state requirement on devices intended for human issue that is "different from, or in addition to, any requirement applicable under [the MDA]" or that "relates to the safety or effectiveness of the device..." 21 U.S.C. § 360k(a). The only way a state requirement can be exempted from this express preemption is if "the [state] requirement is more stringent than a requirement under [the MDA] which would be applicable to the device if an exemption were not in effect;" or if the state requirement is "required by compelling local conditions;" and if "compliance with the requirement would not cause the device to be in violation of any applicable requirement [under the MDA]." 21 U.S.C. § 360k(b).

---

**5.** The Court finds it important to note that, although the Court did not use the *Williams* Court's analysis regarding the substantial-fed-

eral-question doctrine in the *Jenkins* decision, *Williams* was referenced in its *Jenkins* decision for other purposes.

The MDA classifies medical devices in three distinct categories: (1) Class I devices, which are subject to the lowest oversight, *See* 21 U.S.C. § 360c(a)(1)(A); (2) Class II devices, which are subject to special controls, *See* 21 U.S.C. § 360c(a)(1)(B); and (3) Class III devices, which are subject to premarket approval and the highest federal oversight, *See* 21 U.S.C. § 360c(a)(1)(C). Class III devices are classified as such because it:

 (i) (I) cannot be classified as a class I device [or class II device] because insufficient information exists to determine that the application of general controls are sufficient to provide reasonable assurances of the safety and effectiveness of the device . . . , and

 * * *

 (ii) (I) is purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health, or (II) presents a potential unreasonable risk of illness or injury . . .

21 U.S.C. § 360c(a)(1)(C).

The premarket approval process for Class III devices requires multivolume applications to be submitted by the manufacturer and approximately 1,200 hours of review for each application by the FDA. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 318, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) (explaining at depth the premarket approval process). A device will be granted premarket approval only if "there is a reasonable assurance of safety and effectiveness," and if "the proposed labeling is neither false nor misleading." 21 U.S.C. § 360e(a)(1)(A). The FDA determines the safety and effectiveness of the device,

 (A) with respect to the persons for whose use the device is represented or intended,

 (B) with respect to the conditions of the use prescribed, recommended, or suggested in the labeling of the device, and

 (C) weighing any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.

21 U.S.C. § 360c(a)(2). As the Supreme Court has previously recognized, the FDA may "approve devices that present great risks if they nonetheless offer great benefits in light of available alternatives." *Riegel*, 552 U.S. at 318, 128 S.Ct. 999.

Once a device receives premarket approval, the FDA requires the device "to be made with almost no deviations from the specifications in its approval application." *Id.* at 323, 128 S.Ct. 999. The only manner for which a device can be modified is for the manufacturer to submit a supplemental application that details the effects the modifications would have on the safety or effectiveness of the device. *See* 21 U.S.C. § 360e(d)(6)(A)(i). After premarket approval, manufacturers are required to submit detail reports for the FDA's continuous oversight of the device. *See* 21 U.S.C. § 360i.

In the present cases, Plaintiffs argue that Defendants violated, *inter alia,* state law claims of fraudulent concealment and misrepresentation, when Defendants allegedly improperly and illegally sold and misused the Infuse®. *See* Pls.' Mot. Remand, 3, ECF No. 9–1 ("Plaintiffs' Complaint make it clear that violations of federal provisions are alleged in the Complaint, 'not seeking to enforce these provisions in this action,' but 'solely in anticipation . . . that the Medtronic Defendants will assert their affirmative defense of federal preemption'"). Plaintiffs also contend that the question posed before this Court is not whether the interpretation of a federal statute necessarily raises a disputed feder-

al issue, but rather how "the application of clear regulatory prohibitions against off-label solicitation by [Defendants]" applies to the facts of this case. (Pls.' Mot. Remand, 14, ECF No. 9–1).

However, Defendants argue that Plaintiffs' claims necessarily turn on disputed issues of federal law because Plaintiffs cannot prevail on their claims, unless they prove that Defendants violated federal requirements imposed by the FDA on the Infuse®. *See* Defs.' Opp'n to Mot. Remand, 7, ECF No. 17. ("[A] plaintiff cannot prevail on any claim challenging the safety and effectiveness of a medical device granted premarket approval by the [FDA] ... unless he proves that the device failed to comply with the *federal* requirements imposed by the FDA through the agency's premarket approval process") (original emphasis). Defendants further argue that, like this Court's decision in *Jenkins*, "these cases ... present not only the question whether Medtronic violated a federal requirement imposed by the FDA through the premarket approval process, but also other substantial questions of federal law." (Defs.' Opp'n to Mot. Remand, 8, ECF No. 17). Specifically, Defendants argue that three other substantial questions of federal law, which they believe this Court will ultimately have to address: (1) whether the FDCA prohibits off-label promotion; (2) whether premarket approval imposes preemptive federal requirements only on specific uses of devices; and (3) whether § 360k(a) only applies to claims arising from the use of the entire PMA device or just components of the PMA device. *See Id.* at 8–9.

The Court finds Defendants' arguments persuasive. In the Amended Master Complaint, Plaintiffs state that "[a]s a direct and proximate result of [Defendants'] violations of one or more ... federal statutory and regulatory standards of care, a component of Infuse® was implanted in

Plaintiffs and caused them to endure [ ] serious injuries ... [Defendants] failed to act as a reasonably prudent medical device manufacturer, distributor, and/or promoter in violating the FDCA, the MDA [and other] FDA regulations." (Pls.' Am. Master Compl., ¶¶ 819–820, *Jenkins v. Medtronic,* 2:13-cv–02004–JTF–cgc, ECF No. 75–1). Although Plaintiffs argue that the Infuse® was improperly used in their surgeries and, therefore, was not used in its approved way, Plaintiffs do acknowledge that the Infuse® was approved by the FDA and granted a Class III, premarket approval for certain categories of surgeries.

Plaintiffs have set the landscape and scope of the federal issues that will be addressed in this case, and Defendants have properly asserted a plausible applicable preemption defense to Plaintiffs' claims. This Court believes Plaintiffs' claims necessarily raise disputed federal issues. Therefore, Defendants have carried their burden for the first element of the substantial-federal-question doctrine.

**b. A Substantial Federal Interest Exists in these Cases**

Next, the Court turns to the second element of the substantial-federal-question doctrine: the substantiality of the federal interest at issue. The courts have identified four factors that must be considered in determining the substantiality of the federal interest in an issue:

(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute;

(2) whether the federal question is important (i.e., not trivial);

(3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome);

(4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated.)

*Mikulski,* 501 F.3d at 570; *accord Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 700, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (analyzing *Grable*). These four factors are to be examined collectively and in light of the issues presented in each case—meaning that "no single factor is dispositive." *Id.*

These cases do not involve a federal agency or the agency's disputed compliance with a federal statute. However, because of the nature of the medical device in this case, the FDA is invoked but is not the focus of the issue. Instead, the focus of these cases and, in turn, the substantial federal interest in these cases is whether the express preemption in the MDA bars Plaintiffs' state law claims that challenge Defendant's use, sale, and promotion of a Class III device. The courts have previously stated that "general federal requirements could never pre-empt, or general state duties [could] never be pre-empted." *Riegel,* 552 U.S. at 322, 128 S.Ct. 999. However, because the Infuse® is a Class III, PMA device, the Court must address an important federal question that deals specifically, and not generally, with federal regulations and requirements regarding a highly regulated medical device. As the Supreme Court stated in *Riegel,* "[u]nlike general labeling duties, premarket approval is specific to individual devices. And it is in no sense an exemption from federal safety review—it *is* federal safety review." 552 U.S. at 322–323, 128 S.Ct. 999 (original emphasis).

Plaintiffs argue that the Supreme Court's argument in *Gunn* accurately shows why there is no substantial interest in this case, because the *Gunn* Court states that "it is not enough that the federal issue be significant to the particular parties in the immediate suit ... The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." 133 S.Ct. at 1066. Plaintiffs contend that *Williams* should provide the foundation for this Court's decision in remanding this case. Plaintiffs look to *Williams,* arguing that *Grable* does not apply because "a defense, no matter how substantial, cannot provide a sufficient basis for removal." (Pls.' Mot. Remand, 17, ECF No. 9–1). Lastly, Plaintiffs also compare their cases with that of the plaintiffs in *Ohio ex rel. Skaggs v. Brunner,* 549 F.3d 468, 479 (6th Cir.2008), for which the Sixth Circuit found that the plaintiffs in *Skaggs* had raised only state law issues and had "disavow[ed] any reliance on federal law." The *Skaggs* Court went on further to say that, "[a]bsent a substantial federal issue lurking beneath their claim, 'we should take [the claimants] at [their] word.'" *Id.* (internal citation omitted).

Defendants argue that a substantial federal issue exists in these cases because there is a serious differentiation in how the parties interpret the federal statutes and regulations pertinent to the resolution of the issues surrounding the Infuse® device. Defendants harken back to this Court's decision in *Jenkins,* reiterating that the questions presented before this Court are most undoubtedly substantial.

This Court finds that the federal interest at issue is substantial in this case. The federal interest in this issue satisfies three of the four factors identified by the courts: the federal interest (1) presents an important and non-trivial federal question that will (2) dispose of these cases when decided upon and will (3) control numerous other cases. Although Plaintiffs argue that "[t]he resolution of such issues does not directly impact a federal agency or the workings of the federal government,"

Plaintiffs seem to place too heavy a burden on one prong of the four factor test. (Pls.' Mot. Remand, 14, ECF No. 9–1). *See also* Pls.' Reply to Mot. Remand, 7, ECF No. 26 ("No action of the federal government is at issues in this case *sub judice* ").

It is evident that these cases could influence how Class III, PMA medical devices could be analyzed in subsequent litigation on similar issues. Moreover, the more than sixty other cases pending before this Court and the plethora of other cases pending before other courts across the country, involving the Defendants in these cases and the Infuse® medical device, alone prove that this Court's ruling of the federal interest in these cases will not have an inconsequential effect. *See generally, e.g. H.R. ex rel. Reuter v. Medtronic, Inc.,* 996 F.Supp.2d 671 (S.D.Ohio 2014) (finding this Court's analysis in *Jenkins* to be precisely "on point and persuasive"). Consequently, the Court finds the second element of the substantial-federal-question doctrine has been satisfied, because a substantial federal interest exists.

### c. The State–Federal Jurisdictional Balance is Not Damaged by the Conferral of Federal Question Jurisdiction over Plaintiff's Claims

Third, the Court must examine whether a conferral of federal question jurisdiction over Plaintiff's claims would upset the state-federal jurisdictional balance. As the Supreme Court has stated,

[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.

*Grable,* 545 U.S. at 313–314, 125 S.Ct. 2363. As the courts have reiterated time

and again, there is no bright-line rule in determining the presence of a federal issue because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow,* 478 U.S. at 810, 106 S.Ct. 3229. Therefore, it is imperative for the courts to carefully and meticulously analyze these factors so that the state-federal jurisdictional balance is not threatened. As *Grable* succinctly explained, *Merrell Dow* appropriately warned against "[a] general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations [which would] have heralded a potentially enormous shift of traditionally state cases into federal courts." 545 U.S. at 319, 125 S.Ct. 2363.

Plaintiffs argue that if this Court were to accept Defendants' arguments against remand as true, then the Court would be allowed to

[G]o trolling anywhere to hook one of the three exceptions [to the well-pleaded complaint rule], including exploring counterclaims, motions, answers and other responsive pleadings or motions containing defenses, affirmative defense and other possible issues that may result in a federal fight. On this fishing expedition, if the Court hooks any federal fish, then that would support the presence of a federal judge.

(Pls.' Reply to Mot. Remand, 3, ECF No. 26). In essence, Plaintiffs assert that, if this Court were to deny their Motion to Remand, then 100 years of jurisdictional framework would be wholly disrupted. In opposition, Defendants contend that the nature of the issues presently before the Court is the type that can only be determined by federal law.

Here, the issue at hand invokes the MDA because of the categorization of the

Infuse® as a Class III device that has undergone an arduous premarket approval process. As it has been explained above, Congress expressly prescribed the regulation of Class III devices to federal law through the MDA. The MDA unambiguously states that any state requirement that seeks to impose a requirement "different from, or in addition to, any [federal] requirement applicable . . . to the device" will be preempted. 21 U.S.C. § 360k(a)(1). The effect of conferring federal question jurisdiction to an issue so closely bound by federal law would have a "microscope effect" on the state-federal jurisdictional balance. *Grable*, 545 U.S. at 315, 125 S.Ct. 2363.

Plaintiffs argue that the state requirements that would be imposed on Defendants would not be "different from, or in addition to" the federal requirements imposed by the MDA. Instead, Plaintiffs assert that the state requirements are parallel to the federal requirements and, thus, should not be preempted. Additionally, Plaintiffs argue that, even if this Court were to accept Defendants' affirmative defense of federal preemption, the device implanted in him was a Class II and not a Class III medical device. *See* Pls.' Mot. Remand, 3–4, ECF No. 16–1 ("Because the LT–Cages were not used in Plaintiffs' surgeries, to the extent that other cages were used . . . such cages were not approved for use with the BMP/Sponge implanted in Plaintiff, and were only approved as a Class II medical device through the less rigorous 510k process"). Defendants categorically reject Plaintiff's argument. Specifically, Defendants argue that Plaintiffs' arguments that "the Infuse device . . . did not extend to use of the device without the LT–Cage component" and that their claims should not be preempted by the MDA "merely raise[ ] additional substantial and disputed federal questions that must be resolved in the course of these cases." (Defs.' Opp'n to Mot. Remand, 2–

3, ECF No. 17). This Court concurs with Defendants' argument. Because this issue proves to be actually disputed and substantial, it is evident that the issue of preemption would be more appropriately decided under this Court's jurisdiction.

This Court is fully aware that district courts are courts of limited jurisdiction and only hold the power authorized to them by Congress and by statute. This Court is also fully aware that removal cannot be based on a defense. However, as this Court stated in its *Jenkins* decision, when their claims are stripped down to their essential elements, the bases of Plaintiff's Complaint are a challenge to the safety and effectiveness of the Infuse®. The regulations and requirements of the safety and effectiveness of a Class III, PMA device belong under the scope of federal question jurisdiction. Therefore, the Court believes that the state-federal jurisdictional balance remains untouched by the conferral of federal jurisdiction over Plaintiff's claims.

As the *Dillon* decision correctly stated, "Congress offers two roads into federal court based on federal questions, and the state-court defendants in this case seek to take the one less traveled." 992 F.Supp.2d at 753. That second road *Dillon* references is the road where state law claims contain significant federal issues and deviate from the well-plead complaint rule. Because *Dillon* declined to extend the analysis of significant federal issues to the substantial-federal-question doctrine, it ruled that the road less traveled was closed to the defendants in that case. This Court takes the contrary view and believes that, because the substantial-federal-question doctrine applies and because all elements of the doctrine are met in this case, the so-called "less traveled" road is indeed open to Defendants.

## III. CONCLUSION

For the foregoing reasons, this Court finds that Defendants have met their burden for removal. Accordingly, Plaintiffs' Motion to Remand is DENIED. This Court has jurisdiction to rule on all claims brought before it regarding these cases.